**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION, Appellant,**

v.

**DURO BAG MANUFACTURING COMPANY; Donna T. Smith, Appellees.**

No. 2006–CA–002625–MR.

Court of Appeals of Kentucky.

March 28, 2008.

Amy Peabody, Education Cabinet, Office of Legal Services, Frankfort, KY, for appellant.

Mark E. Lutz, Cincinnati, OH, for appellee, Duro Bag Manufacturing Company.

No Brief Filed for Appellee, Donna T. Smith.

Before DIXON, LAMBERT and WINE, Judges.

### OPINION

WINE, Judge.

The Kentucky Unemployment Insurance Commission ("Commission") appeals the Boone Circuit Court's ruling that Duro Bag Manufacturing Company's ("Duro") employee, Donna T. Smith ("Smith"), was fired on August 13, 2004, for misconduct, and therefore is not entitled to unemploy-

ment benefits. For the reasons herein, we affirm the trial court.

The parties do not dispute that Duro fired Smith, a machine operator, for appearing for work with a blood alcohol level of .047. Smith acknowledged she voluntarily drank eight ounces of whiskey over a six-hour period, allegedly quitting at 3:00 a.m., on August 8, 2004, 18 hours before going to work. Although she arrived at work at 10:00 p.m., on August 8, she was not tested for approximately 2 ½ hours. Her supervisor, Terry Purcell, asked that she submit to testing to determine if she was using drugs or alcohol as he noted she was "working slowly." Smith further acknowledged that she was aware of the negotiated contract between her union and Duro which states in part:

### DRUG AND ALCOHOL POLICY

Rules

1. Employees are prohibited from using, possessing, transmitting or being under the influence of intoxicating alcohols, in any form, on Company premises. Violators will be subject to immediate discharge:

Employees may be required to submit to a medical examination and/or to give a "timely" urine specimen or blood sample for analysis upon request, when the Company reasonably suspects that the employee is using or under the influence of alcohol in violation of this rule. Refusal to cooperate, in a timely fashion, in the foregoing will constitute an independent violation of this rule and will subject the employee to immediate discharge. **Any test result at or above .02 will be deemed "under the influence."**

(Emphasis added).

Following her termination, Smith applied for unemployment benefits. Follow-

ing a hearing on October 11, 2004, and relying on Kentucky statutes pertaining to operating a motor vehicle,[1] the unemployment insurance referee found Duro failed to meet the required burden of proof to deny benefits to an employee discharged for misconduct. The Commission adopted the Appeals Referee's ("Referee") findings of fact and conclusions of law and denied Duro's motion to present additional evidence, as well as confirmed the referee's decision. Duro appealed to the Boone Circuit Court pursuant to KRS 341.450. The trial court reversed the grant of benefits, finding there was employee misconduct and this appeal followed.

■ Upon review of an administrative agency's adjudicatory decision, an appeal court's authority is somewhat limited. *See American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450 (Ky.1964) (stating judicial review involves whether an administrative agency's decision is arbitrary). The judicial standard of review of an unemployment benefit decision is whether the Commission's findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts. *Burch v. Taylor Drug Store, Inc.*, 965 S.W.2d 830, 834–35 (Ky.App.1998), *citing Southern Bell Telephone & Telegraph Co. v. Kentucky Unemployment Insurance Commission*, 437 S.W.2d 775, 778 (Ky.1969); *Kentucky Unemployment Insurance Commission v. Stirrat*, 688 S.W.2d 750, 751–52 (Ky.App. 1984); *Tackett v. Kentucky Unemployment Insurance Commission*, 630 S.W.2d 76, 78 (Ky.App.1982).

■ The law is well established that we review the unemployment insurance act ("Act") liberally in favor of applicants. *See, e.g., Department of Education v.*

---

1. Specifically, Kentucky Revised Statutes ("KRS") 189A.010(3)(a).

*Commonwealth,* 798 S.W.2d 464, 467 (Ky. App.1990). Also, we note that whether an employee's termination is for lawful cause or for misconduct under the Act is a distinct question. Thus, while an employee may be discharged for cause, the Act provides mitigating circumstances which would permit statutory benefits. *See, e.g., Alliant Health System v. Kentucky Unemployment Insurance Commission,* 912 S.W.2d 452, 454 (Ky.App.1995). We have held (1) that, under the Act, "misconduct" is limited to willful, wanton, and deliberate violations of rightful standards of behavior or recurring negligence or carelessness manifesting a wrongful intent or evil design; and (2) that an isolated instance of unsatisfactory conduct does not constitute "misconduct" under the Act. *Boynton Cab Company v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). The principles in *Boynton* have been adopted by our Court. *See Douthitt v. Kentucky Unemployment Insurance Commission,* 676 S.W.2d 472, 474 (Ky.App.1984).

Unemployment compensation benefits may be denied, when subject to KRS 341.370(1)(b), the employee "has been discharged for misconduct ... connected with his most recent work...." Further, KRS 341.370(6) defines "'discharge for misconduct' as used in this section shall include but not be limited to, ... knowing violation of a reasonable and uniformly enforced rule of an employer; ... reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours...."

■ Here, the record shows that Duro has proven a single instance of unsatisfactory conduct by Smith. Not only does this unsatisfactory conduct constitute good cause for firing Smith, but her single act of inappropriate behavior also meets the definition of misconduct under the Act as construed by the above-cited precedents. The Commission's reliance on *Shamrock Coal Company, Inc. v. Taylor,* 697 S.W.2d 952, 953 (Ky.App.1985), where a single instance of substandard performance, not misconduct, can easily be distinguished. In *Shamrock,* the employee accidentally overturned a bulldozer. In the case *sub judice,* Smith intentionally consumed a significant amount of alcohol and then reported to work while still under the influence as defined by the union-approved policy manual.

While the alcohol was consumed off the premises and several hours before beginning work, our Court has previously held that such conduct is sufficient to disqualify the claimant from receiving benefits even though it was not anticipated there would be a lingering after effect. *Smith v. Kentucky Unemployment Insurance Commission,* 906 S.W.2d 362 (Ky.App.1995). (Claimants were denied benefits even though they smoked marijuana off the business premises three days earlier.)

Further, the Referee and the Commission misapplied the law when they utilized the DUI statutes in determining what level of alcohol intoxication constitutes misconduct. The Referee found, "the claimant was discharged for violating the employer's alcohol policy, which was known to her. The policy provides that employees are considered under the influence of alcohol if test results are equal to or greater than 0.02."

■ The Referee then relied on KRS 189A.010(3)(a) which provides "[i]f there was an alcohol concentration of less than 0.05 ..., it shall be presumed that the defendant was not under the influence of alcohol[.]" The Referee opined, "The Referee's bound by the Kentucky Unemployment Insurance Commission's rulings in similar cases that has (sic) been adjudicated under standards established by Ken-

tucky law relating to the operation of a motor vehicle." Such a finding is contrary to previous holdings by the Commission as well as our Courts. In *Kentucky Unemployment Insurance Commission v. King*, 657 S.W.2d 250 (Ky.App.1983), the claimant, a cashier, on one occasion checked out purchases for a family member, contrary to company policy. The Commission and Referee were quoted as finding, "In this case, whether or not the claimant was guilty of any legal wrongdoing is not relevant." *King*, 657 S.W.2d at 251. Likewise, whether or not Smith was intoxicated under the DUI statutory definition is not relevant in this case. A level of intoxication, determined through negotiations between the company and union, set for operating heavy machinery is not unreasonable and there was no evidence it was not uniformly applied. The Commission's policy of relying on the statute to define intoxication is only appropriate when there is no definition in the employer's uniformly enforced policy. Further, the only reason the supervisor asked Smith to submit to a blood test to determine her B.A. was she appeared to be acting strangely. Thus, even this low level of intoxication must have had some effect on her motor skills.

For these reasons, we affirm the Boone Circuit Court order.

ALL CONCUR.