Lesa Borntraeger SKEES, Appellant,

v.

KENTUCKY UNEMPLOYMENT IN-SURANCE COMMISSION and America's Directories, Appellees.

No. 2010–CA–000389–MR.

Court of Appeals of Kentucky.

Aug. 12, 2011.

Robert L. Heleringer, Louisville, KY, for Appellant.

James C. Maxson, Frankfort, KY, for Appellee, Kentucky Unemployment Insurance Commission.

Before STUMBO and THOMPSON, Judges; SHAKE,[1] Senior Judge.

*OPINION*

THOMPSON, Judge:

Lesa Borntraeger Skees appeals from an Opinion and Order of the Jefferson Circuit Court affirming a decision of the Kentucky Unemployment Insurance Commission (KUIC) denying Skees's claim for unemployment benefits. Skees contends that the KUIC's determination that she was properly terminated from employment due to employee misconduct was not based

---

1. Senior Judge Ann O'Malley Shake, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

on substantial evidence and was contrary to law. We conclude that KUIC's determination was based on an improper application of the law and reverse.

America's Directories (Directories) is an Indiana based corporation which conducts business in Kentucky as a publisher of telephone books and directories. Its corporate office is located in Mishawaka, Indiana. On May 21, 2007, Skees began her employment with Directories as a full-time marketing consultant at its Louisville, Kentucky office.

When Skees began her employment, she was instructed to read and sign an "Employee Agreement" which set forth certain conditions of her employment. The agreement provided in relevant part that Skees would be required to engage in "out of town and overnight travel to other markets." Skees testified that prior to signing the agreement, she requested to have its terms reviewed by her attorney but was told that the agreement "could not leave the office." After commencing her employment, Skees requested a copy of the agreement but did not receive a copy until after her termination.

After receiving five-days' training at the corporate headquarters in Mishawaka, she began her employment at the Louisville office. Skees worked for Directories at the Louisville location for approximately three months and was not requested or instructed to work out of town or travel overnight on company business.

On Friday, September 7, 2007, Directories' Sales Director Otis Lockett initiated a conference call with the Louisville office employees, including Skees. According to Skees, Lockett summoned all the employees to the corporate headquarters in Mishawaka, "as soon as possible" for an indeterminate period of employment at the corporate office for the purpose of boosting lagging advertising sales and to conduct a sales canvas. Mishawaka is approximately 260 miles north of Louisville.

Although Lockett testified that he described the relocation as temporary, Skees testified that when she inquired into the specific duration of her stay in Mishawaka, Lockett stated that it "might be for 3 or 4 weeks, or it might be longer. We (the company) don't really know." During the conference, the employees were told that the company would pay their food, gas, and lodging while in Mishawaka but were offered no details.

Skees became concerned with the apparent lack of information provided by Directories regarding the terms of the relocation, its duration, and the lack of specifics regarding lodging and transportation expenses. Skees informed Directories that the move would be difficult for her because she had a sick mother living in Louisville, a child attending the University of Kentucky, and a home in Louisville with three pets. She again asked Directories for specific information about the 260–mile relocation to Mishawaka. She was assured that such information would be forthcoming by the following Monday, September 10, 2007, the date scheduled for her relocation.

On the morning of September 10, 2007, Skees telephoned Lockett who asked her why she had not reported to the Mishawaka headquarters as directed the previous Friday. Skees responded that she could not relocate her employment to Mishawaka on an indefinite basis without information regarding the length of stay, hotel accommodations, and reimbursement of costs. Lockett testified that he asked Skees if it was possible to resolve the difficulties with the relocation, to which Skees replied that she could not come to Mishawaka at that time and was not sure if she ever could. Lockett then terminated Skees's employment with Directories. As a result of the abrupt nature of the

request, coupled with the lack of information, six of the seven employees of the Louisville office resigned or had their employment terminated.

That same day, Skees filed an application for unemployment compensation benefits with the Division of Unemployment Insurance. Directories received notice of the application on September 11, 2007, and faxed a written protest to the Division of Unemployment Insurance on October 2, 2007.

The Division initially approved Skees's application based on its determination that Skees left Directories for cause attributable to her employment. Additionally, the Division found that Directories failed to tender its protest within the time period set out in KRS 341.370 and 787 KAR 1:070.

The matter then went before a special referee. The referee affirmed that portion of the decision which denied Directories reserve account relief for lack of a timely protest, but found that Skees voluntarily quit her employment without good cause and was not entitled to unemployment benefits.

Skees appealed to the KUIC. The KUIC rendered a decision on January 28, 2008, finding that Directories discharged Skees from her employment for misconduct connected with her employment pursuant to KRS 341.370(6) and, therefore, denied unemployment benefits. It affirmed the referee's determination that Skees improperly received benefits in the amount of $1,833.

Skees appealed to the Jefferson Circuit Court. The court determined that Lockett asked Skees to relocate to Mishawaka on a temporary basis for up to three or four weeks, and that this request was consistent with the terms of Skees's employment as set out in the Employee Agreement. Citing *Kentucky Unemployment Ins. Comm'n v. Duro Bag Mfg. Co.*, 250 S.W.3d 351 (Ky.App.2008), the court examined the statutory phrase "discharged for misconduct" and concluded that Skees's failure to obey reasonable instructions to temporarily work out of the Mishawaka office justified Skees's termination for cause. As such, it concluded that that the KUIC's denial of unemployment benefits was supported by substantial evidence and that the KUIC applied the correct law. This appeal followed.

■ Skees argues that the circuit court erred in affirming the KUIC's determination that Directories properly discharged her for cause because the commission's decision was not based on substantial evidence and was contrary to law. She argues that the referee, the Commission, and the circuit court ignored uncontroverted evidence of record that she never received a copy of the employment agreement until after her employment was terminated; that Directories never relied on the agreement to order her relocation to the Mishawaka office; that she had never previously been told by Directories to engage in overnight travel; and, that she did not refuse to obey a "reasonable instruction of her employer" as set forth in KRS 341.370(6). She further argues that the referee improperly introduced the allegation of "misconduct" into the proceedings. She seeks an order reversing the circuit court's Opinion and Order and remanding the matter with directions to reinstate her unemployment insurance benefits retroactive to September 11, 2007.

An employee is disqualified from receiving unemployment benefits after termination of employment if the employee has been discharged for misconduct connected with the employee's most recent work. KRS 341.370(1)(b). The phrase "discharged for misconduct" as set out in KRS Chapter 341 includes an employee's act of "refusing to obey reasonable instructions."

KRS 341.370(6). The question for our consideration is whether Skees's refusal to abruptly relocate her employment for an indeterminate time and with no information regarding compensation for expenses was unreasonable.

■■■ On review of an administrative decision, the circuit court must not reconsider the merits of the underlying claim nor substitute its judgment for that of the agency. *500 Associates, Inc. v. Natural Res. and Envtl. Prot. Cabinet,* 204 S.W.3d 121, 131 (Ky.App.2006). "[A]n administrative agency's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo.*" *Hutchison v. Kentucky Unemployment Ins. Comm'n,* 329 S.W.3d 353, 356 (Ky.App.2010). "The judicial standard of review of an unemployment benefit decision is whether the KUIC's findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts." *Thompson v. Kentucky Unemployment Ins. Comm'n,* 85 S.W.3d 621, 624 (Ky.App.2002) (citations omitted). We conclude that the KUIC improperly applied the facts to the controlling law and, therefore, reverse.

Directories emphasizes the employment agreement signed by Skees and its provision that she would be required to engage in "out of town and overnight travel to other markets ... as directed by Employer." We are not persuaded that the agreement controls our decision. A reasonable interpretation of the cited provision is that "out of town" and "overnight travel" does not mean a 260–mile relocation from Skees's daily work site for an indefinite period. Moreover, even if the relocation was properly characterized as "temporary" by Directories, Lockett did not definitively state how long Skees would work in Mishawaka. We conclude that the case law and current statutory law require a result dif-

ferent than that reached by the commission.

In *Brock v. Kentucky Unemployment Ins. Comm'n,* 693 S.W.2d 69 (Ky.App. 1985), Brock's employer informed him that the company operations were moving eighty miles from its current location. After Brock declined to move and resigned from his employment, he was denied benefits because he "voluntarily" left his employment. The circuit court affirmed. This Court reversed, holding that Brock was entitled to argue before the Commission's referee that the relocation rendered the work not "suitable" as used in KRS 341.370(1)(c). *Id.* at 70.

Consistent with *Brock,* KRS 341.370(1)(c)(2) now provides in part:

(c) No otherwise eligible worker shall be disqualified from receiving benefits for:
2. Leaving work which is one hundred (100) road miles or more, as measured on a one (1) way basis, from his home to accept work which is less than one hundred (100) road miles from his home....

The General Assembly codified the reasoning expressed in *Brock:* An employer cannot avoid payment of unemployment insurance benefits by relocating an employee more than one hundred miles from his original work place.

In this case, Skees was forced to abruptly relocate her employment 260 miles from home for an indefinite period of time. Her options were to move, commute with no information regarding the payment of expenses, or resign. Although Directories contends that the relocation was temporary, it remains that there was no definite time period and no details regarding the relocation. The uncertainty of the circumstances associated with the relocation and the abruptness of the relocation rendered Directories' order unreasonable and, therefore, Skees is not precluded from receiving unemployment benefits.

Finally, because the referee's decision regarding the timeliness of Directories' protest pursuant to KRS 341.370 and further defined in 787 KAR 1:070 was not appealed to the KUIC, it refused to address the issue and it was not considered by the circuit court. For the same reason, we likewise do not address the issue.

For the foregoing reasons, we reverse the Opinion and Order of the Jefferson Circuit Court and remand the case to the KUIC for an order reinstating Skees's unemployment insurance benefits, retroactive to September 11, 2007.

ALL CONCUR.