KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION,
Appellant,

v.

David G. HAMILTON, Appellee.

No. 2010–SC–000252–DG.

Supreme Court of Kentucky.

Dec. 22, 2011.

Rehearing Denied May 24, 2012.

As Corrected July 2, 2012.

James Chesnut Maxson, Education and Workforce Development Cabinet, Office of Legal Legislative Services, Frankfort, KY, Counsel for Appellant.

Scott Mitchell Miller, Priddy, Cutler, Miller & Meade, PLLC, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

The sole issue before this Court is whether the Kentucky Unemployment Insurance Commission correctly interpreted and applied KRS 341.090, which designates

the time period for determining the wages to be used to calculate the unemployment benefits for a claimant who has suffered a job-related injury.

On April 1, 2005, David Hamilton was injured during the course of his employment as a delivery person at G & J Pepsi Cola Bottlers. Due to the injury, Hamilton has never returned to work. He received workers' compensation benefits effective April 2, 2005, and continuing through April 14, 2007. During a portion of this period, Hamilton also received past vacation and accumulated sick pay. When the workers' compensation benefits ceased, Hamilton applied for and received unemployment insurance benefits.

Generally, a claimant's unemployment insurance benefit is based upon the wages[1] he received during his "base period," meaning four of the last five calendar quarters of his employment. However, KRS 341.090 provides that if, because of a work-related injury, the claimant's wages during the quarters which comprise the base period were not sufficient to entitle him to receive unemployment benefits, the benefit calculation may instead be based upon four quarters of an "extended base period" that includes the four quarters preceding the base period.

KRS 341.090 provides, in pertinent part:

(1) "Base period" means the first four (4) of the last five (5) completed calendar quarters immediately preceding the first day of a worker's benefit year. However, if an individual lacks sufficient base-period wages because of a job-related injury, and he has received or was eligible to receive workers' compensation, upon written application by the claimant an extended base period will be substituted for the current base period on a quarter-by-quarter basis as needed to establish a valid claim or to increase the benefit rate of a claim if:

(a) The individual did not earn wages because of a job-related injury for at least seven (7) weeks of each base period quarter to be substituted by an extended base period quarter;

(b) No later than one (1) month prior to the expiration of workers' compensation benefits, the employer or carrier shall inform, orally and in writing, all recipients of their potential eligibility for unemployment insurance, and also provide a statement verifying the individual's eligibility for workers' compensation; and

(c) A claim for unemployment insurance compensation is filed no later than the fourth week of unemployment after the end of the period of injury compensated or eligible to be compensated by workers' compensation;

(2) "Extended base period" means the four (4) quarters prior to the claimant's base period. These four (4) quarters may be substituted for base-period quarters on a quarter-for-quarter basis in order to establish a valid claim or in-

---

1. KRS 341.030(4)(b) provides: "Wages" does not include the amount of any payment made to, or on behalf of, a worker under a plan or system established by an employing unit that makes provision for its workers generally or for a class of its workers, including any amount paid by an employing unit for insurance or annuities, or into a fund, to provide for any such payment, on account of: ... (b) Sickness or accident disability but, in the case of payments made to an employee or any of his dependents, this subsection shall exclude from the term 'wages' only payments which are received under a workers' compensation law[.]" Hamilton does not challenge the exclusion of his workers' compensation benefits from his unemployment benefits calculation. Unlike workers' compensation benefits, accumulated vacation and sick leave payments do count as wages, in the quarter paid, for unemployment benefit calculation purposes.

crease the benefit rate of a valid claim regardless of whether the wages have been used to establish a prior claim, except wages transferred to or from another state under a combined wage agreement will be excluded if used in a prior claim. Benefits paid on the basis of an extended base period, which would not otherwise be payable, shall be charged to the pooled account if the chargeable employer is a contributing employer. If the chargeable employer is a reimbursing employer, benefits shall be billed to his reimbursing account[.]

The parties agreed that according to KRS 341.090(1), Hamilton's base period is the four quarters of 2006. They also agreed that, because his base period wages were insufficient to qualify him for unemployment benefits, KRS 341.090(1) permits the use of an "extended base period" that captures earnings leading to a more equitable unemployment benefit. The Commission determined that KRS 341.090(2) requires that the extended base period may include only the four calendar quarters that *immediately* precede the base period. As a result, the Commission based Hamilton's unemployment benefits on an extended base period comprised of the first three quarters of 2005, and the fourth quarter of 2006.[2] Pursuant to this extended base period, Hamilton was awarded benefits of $149.00 per week.

Hamilton appealed to the Fayette Circuit Court, arguing that the extended base period should be based upon the four calendar quarters of the year 2004 because those were the most recent four quarters which fairly reflect the wages he earned prior to his injury. In making its ruling, the circuit court did not squarely address the meaning of "extended base period." Instead, it reversed the Commission's decision based on its erroneous finding that Hamilton's workers' compensation benefits had been included in the Commission's calculation in violation of KRS 341.030(4)(b).

The Commission sought review in the Court of Appeals. With both parties in agreement that Hamilton's workers' compensation benefits had *not* been included in the benefits calculation, the Court of Appeals reversed that portion of the Fayette Circuit Court's opinion. However, the Court of Appeals upheld the reversal of the Commission's order by accepting Hamilton's argument that the extended base period need not be limited to the four quarters that immediately precede the base period. Based largely upon the view that any ambiguity in a statute must be construed so as to further the legislative purpose of providing unemployment benefits, the Court of Appeals interpreted KRS 341.090 as providing a more generous extension of the base period, because "the legislature intended that workers' compensation recipients be awarded an unemployment award based on their regular, preinjury wages." Accordingly, the Court of Appeals remanded the case for a recalculation of benefits based upon calendar year 2004, the most recent four quarter period reflective of Hamilton's pre-injury earnings.

■ This Court granted the Commission's motion for discretionary review. Our review is two-fold. We first determine whether the Commission's findings of fact are supported by substantial evidence, and then whether it correctly applied the law to the facts. *Thompson v. Kentucky*

---

2. There is a suggestion in the record that the extended base period was comprised of the first, second, and *fourth* quarters of 2005 and the fourth quarter of 2006. However, this discrepancy is not relevant to our disposition of the case. The Referee Decision specifically states "the first three (3) quarters of 2005."

*Unemployment Ins. Com'n,* 85 S.W.3d 621, 624 (Ky.App.2002). Because the facts are undisputed, our attention turns solely to the proper interpretation of "extended base period" as defined in KRS 341.090(2).

▓▓▓ We sympathize with the concerns that led the Court of Appeals to accept Hamilton's proposed interpretation of KRS 341.090(2), allowing a claimant to obtain a more favorable time period upon which to calculate his unemployment benefits. We also acknowledge that we are obliged to "liberally construe" KRS 341.090 to promote the legislative objective of providing unemployment benefits to qualified individuals.[3] Nevertheless, before doing so, we must also bear in mind the well-established principle of law that "where the language of a statute is clear and unambiguous on its face, [we] are not free to construe it otherwise even though such construction might be more in keeping with the statute's apparent purpose." *MPM Fin. Group, Inc. v. Morton,* 289 S.W.3d 193, 197 (Ky.2009). Because we are unable to find any ambiguity in the language of KRS 341.090 that permits us to expand the meaning of "extended base period" beyond the four quarters preceding the claimant's normal base period, we are constrained to reject the approach adopted by the Court of Appeals.

KRS 341.090(2) defines "Extended base period" as *"the* four (4) quarters prior to the claimants' base period." (emphasis added). Grammatically, "the" is a definite article and its function is to confine or restrict the meaning of the noun that follows it to a particular thing or set of things. In plain English, and common parlance, *"the* four quarters prior to the base period" does not mean "four quarters prior to the base period." It does not mean *"any* four quarters prior to the base period," or "four *of the* quarters prior to the base period." The use of the word "the" particularizes the quarters that constitute the extended base period to *that specific set of four quarters that* precedes the base period. One could, for the sake of redundancy, say "the four quarters *immediately* prior to the base period," but the plain meaning is the same. No clearer example could be constructed than the common phrase, "the day before yesterday," which leaves no question at all in the mind of the reader about the precise day to which it refers. With an identical grammatical construction, the phrase in question here ("the four quarters prior to the base period") is equally precise.

It is beyond doubt that the legislature's purpose in allowing for an "extended base period" was to provide a more generous alternative when use of only the "base period" results in benefits the legislature perceived to be unreasonably or unfairly low. But exactly how generous that alternative was intended to be is purely a matter of legislative discretion.[4] The legisla-

---

**3.** "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." KRS 446.080(1). *Kentucky Unemployment Ins. Com'n v. Duro Bag Mfg. Co.,* 250 S.W.3d 351, 353 (Ky.App.2008) ("The law is well established that we review the unemployment insurance act liberally in favor of applicants.")

**4.** We would further note that it was also the legislature's intent to exclude workers' compensation benefits from the unemployment benefit calculation in all situations. While in the usual case this will work to the benefit of the claimant by allowing him to exclude quarters he was obtaining workers' compensation in favor of quarters with full wages, nevertheless, the legislature also extended the exclusion to cases like this, where the exclusion works to the claimant's disadvantage. Though Hamilton's workers' compensation wages were a surrogate for his normal wages, the statutory language makes no exception for injured workers in Hamilton's situation.

ture exercised its discretion in favor of an extended base period consisting of "the" four quarters prior to the base period. Because we are bound by the wording of the statute, we see no room for this Court to exercise discretion to enlarge or reduce what the legislature has done.

The Commission properly applied the statute as written by the General Assembly in calculating Hamilton's unemployment benefits. If the plain words chosen by the legislature do not effectuate its purpose, it is for the General Assembly, not the courts, to re-write the statute, even when the statute as written produces an unsatisfying result.[5]

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the decision of the Unemployment Insurance Commission is correspondingly reinstated.

MINTON, C.J., ABRAMSON, and SCHRODER, JJ., concur.
CUNNINGHAM, J., dissents by separate opinion in which NOBLE and SCOTT, JJ., join.

CUNNINGHAM, J., dissenting:

I respectfully dissent. The sole issue in this case is the proper definition of "extended base period," as defined in KRS 341.090(2). The majority relies almost exclusively on use of the word "the" to conclude that the four quarters used to calculate an extended base period are the four quarters immediately preceding the base period. I cannot agree that the interpretation of the statute should rest on that single phrase, particularly when the statute itself, when read in its entirety, evinces a clear and unambiguous intent.

The wording of KRS 341.090 itself reveals the legislature's intent to accommodate persons in Hamilton's position who have been injured on the job. Recognizing that injuries often result in insufficient base period wages, the legislature created the "extended base period" as an alternate basis of benefit calculation. The "extended base period" mechanism is, by definition, used to "establish a valid claim or *increase the benefit rate of a valid claim.*" KRS 341.090(1) (emphasis added). Again, in subsection (2), the legislature reiterated its intent that this extended base period be permitted "to establish a valid claim or increase the benefit rate of a valid claim." The legislature could not be clearer in its stated intent and goal—that an injured worker's benefits be calculated based upon his regular earnings prior to the injury.

"All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." KRS 446.080(1). "The unemployment statutes are designed to protect workers who, through no fault of their own, find themselves without work." *Vance v. Kentucky Unemployment Ins. Com'n,* 814 S.W.2d 284, 286 (Ky.App.1991). *See also Kentucky Unemployment Ins. Com'n v. Kroehler Mfg. Co.,* 352 S.W.2d 212, 214 (Ky.App.1961) (purpose of unemployment act is to "provide benefits" for qualified persons). "The law

---

**5.** We acknowledge that our rules of interpretation require that we avoid a statutory construction which produces an absurd or wholly unreasonable result. *Coy v. Metropolitan Property & Cas. Ins. Co.,* 920 S.W.2d 73, 74 (Ky.App.1995) ("Statutory language must be accorded its literal meaning unless to do so would lead to an absurd or wholly unreasonable result."). However, a result that is merely arguably unfair, as here, does not implicate this rule. It is worth noting that the issues under review implicate social-economic legislation in which the legislature has wide discretion. The legislature has to draw lines, and it may sometimes seem unfair that the statute was not drawn a little differently to encompass an additional situation, but this does not alter the rule that a statute should first of all be interpreted according to its plain language.

is well established that we review the unemployment insurance act liberally in favor of applicants." *Kentucky Unemployment Ins. Com'n v. Duro Bag Mfg. Co.*, 250 S.W.3d 351, 353 (Ky.App.2008).

The statute expressly permits Hamilton to substitute the latest quarters during which he earned his regular wages. To force Hamilton to base his award on quarters during which he earned only accumulated sick and vacation pay, constituting far less than his regular wages, is in direct contravention of the plain language of KRS 341.090 and Kentucky's unemployment scheme.

NOBLE and SCOTT, JJ., join this dissent.