Linda BURCH, Appellant,

v.

TAYLOR DRUG STORE, INC.; and
Kentucky Unemployment Insurance
Commission, Appellees,

and

KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION,
Appellant,

v.

TAYLOR DRUG STORE, INC.; and
Linda Burch, Appellees.

Nos. 96–CA–1703–MR, 96–CA–1822–MR.

Court of Appeals of Kentucky.

Jan. 30, 1998.

Case Ordered Published by
Court of Appeals March 20, 1998.

Randall K. Justice, Frankfort, for Kentucky Unemployment Insurance Commission.

Oliver H. Barber, Jr., Rebecca Rudd Barnes, Gittleman & Barber, Louisville, for Linda Burch.

Kenneth S. Handmaker, Julie A. Gregory, Middleton & Reutlinger, Louisville, for Taylor Drug Stores, Inc.

Before DYCHE, HUDDLESTON and KNOPF, JJ.

## OPINION

KNOPF, Judge.

These appeals are from a circuit court judgment reversing a decision by the Kentucky Unemployment Insurance Commission (the Commission) to award unemployment insurance benefits to the applicant. We reverse that portion of the circuit court's judgment holding that the Commission exceeded its statutory authority by removing the claim from the referee prior to the entry of a final order. However, we affirm the portion of the circuit court's order holding that the Commission's findings were not supported by substantial evidence. Therefore, we affirm the circuit court in result.

We take our recitation of the facts of this case from the Commission's factual findings. Linda Burch began her employment with Taylor Drug Store on August 26, 1992 as a part-time sales clerk. Prior to beginning her employment, she had been diagnosed as having a dissociative disorder and major depression with psychotic features. For these conditions, her physician prescribed the antidepressant drug Zoloft, and she regularly saw a therapist. Her supervisor at Taylor Drug was aware of her therapy schedule and took steps to accommodate Burch's regular appointments.

In 1992, Burch's position changed to full-time pharmacy clerk. Taylor Drug acknowledges that Burch was a model employee. On two (2) separate occasions, Taylor Drug gave Burch commendations and awards for her work performance.

On April 26, 1994, an incident occurred between two (2) of Burch's co-workers. Burch took it upon herself to bring the incident to the attention of the store management. Her supervisor, Joyce Warner, informed Burch to stay out of the dispute, and that Warner would handle the situation. Store management did deal with the situation, but Burch continued to dwell on it to the point which it was upsetting her. From this time on, Burch began to withdraw and would not speak to anyone unless it was necessary to conduct business. On April 27, Burch informed Warner in a raised voice that she did not want to be assigned extra work hours because, "I'm just here putting in my time. I'm just putting in eight hours."

On April 28, Burch was scheduled to work until 9:00 p.m. with the pharmacist, Mike Ball. Around 4:45 p.m. another employee, Elaine Brooks, was about to end her shift and asked Ball if she should close down her register. Ball instructed Brooks to leave her register open as it was the only register from which money orders could be purchased. Burch overheard Ball's statement and announced, "Someone better count that register down because I'm not going to do it." When Ball suggested that Burch calm down, she repeated her statement. Ball then asked Burch to come into his office, at which point Burch refused. When Ball again asked

Burch to go to his office, she again refused. Finally, after a third request from Ball, Burch accompanied Ball to his office.

When Ball and Burch reached the office, Ball sat down and asked Burch to be seated. She did not sit down but stood over him with her finger in his face yelling at him for five (5) to ten (10) minutes. Burch told Ball that she did not have to listen to him; she did not have to listen to anyone else; she was going to work her eight (8) hours and go home; and that there was not anything they could do about it. Burch then proceeded to bring up the earlier incident between the two (2) employees. Ball told Burch that management had taken care of that problem and that it was none of her business.

Ball then requested that Burch punch out and go home. Burch refused. When Ball again instructed her to leave, Burch returned to the pharmacy. Ball contacted the district manager, who agreed with Ball that Burch should be sent home. Shortly thereafter, Burch apologized to Ball and she agreed to go home.

The next day, Burch was questioned by Connie Adams, the human resources manager. Burch admitted that she had behaved in the manner described and stated that she just "lost it." After that meeting, Adams discharged Burch for insubordination. Subsequently, Burch presented Adams with a medical statement indicating that she had been diagnosed with dissociative disorder. Burch requested that she be given her job back. Adams declined to accept the medical statement since Burch had already been discharged.

Burch then filed a claim for unemployment insurance benefits. Taylor Drug contested her eligibility. The Division of Unemployment Insurance issued a "Notice of Determination" on May 13, 1994, finding that Burch was disqualified from receiving unemployment insurance benefits because she was discharged for misconduct related to her work. Burch appealed the initial determination to an unemployment insurance referee, pursuant to KRS 341.420(2). Referee Janet Snider conducted an evidentiary hearing on the appeal on June 8, 1994. Due to time constraints, the hearing was not completed that day. Referee Snider scheduled a second hearing date for July 13.

Burch's counsel wrote a letter on July 8 informing Referee Snider's office that he was unavailable on July 13 and asking that the hearing be rescheduled. Unfortunately, the referee's office did not receive his letter until July 14, one day after the hearing. The hearing was conducted on July 13 in the absence of Burch and her counsel. Referee Snider entered her decision on July 15, affirming the initial determination made by the Division. Referee Snider found that Burch was discharged for misconduct relating to her employment and was thereby disqualified from receiving unemployment insurance benefits.

On July 19, Burch's counsel wrote the Commission informing them of the situation. He asked that the referee decision be set aside and that the second hearing date be rescheduled. The letter was referred to the appeals division, and the Commission treated it as an appeal of the July 15 referee's decision. On August 19, the Commission entered an order remanding the matter to the referee for an additional hearing. After the hearing, the Commission directed that the case was to be returned for review and decision by the full Commission.

The additional hearing was conducted by Referee Snider on September 20. The matter was then returned to the full Commission for a decision. On October 14, the Commission entered its findings of fact and conclusions of law. The Commission reversed the referee's decision, concluding that Burch did not engage in misconduct related to work. The Commission reasoned as follows:

> Misconduct has been construed to mean any act or omission by a worker which demonstrates a willful or wanton disregard for the legitimate business interests of the employer.

> An employee is responsible for their behavior only when they have the ability to control that behavior. The claimant cannot be held accountable for her actions on April 28, 1994, as she was incapable at that time of controlling her behavior due to her dissociative disorder. She did not willfully

act in an insubordinate manner. In cases of this type, misconduct cannot be found. Therefore, the employer's reserve account may not be relieved of charges under this claim.

*Commission Order,* October 14, 1994, pp. 4–5.

Taylor Drug filed an appeal of the Commission's Order in the Jefferson Circuit Court, pursuant to KRS 341.450. Following a hearing and briefing of the issues, the circuit court vacated the Commission's order. The circuit court found that the Commission improperly removed the matter from the referee prior to the entry of a final order. As a result, the court found that the Commission overstepped its authority in substituting its decision for that of the referee. The lower court also found that the Commission applied the incorrect rule of law. The court concluded that Burch presented insufficient evidence of her mental condition to justify her admitted misconduct. The court remanded the matter to the Commission with directions to reinstate the referee's decision.

■ The Commission now appeals the circuit court's order. Burch filed an appeal and joins with the Commission in contending that the trial court erred in finding the Commission's order to be unsupported by substantial evidence. We find that the circuit court erred holding that the Commission improperly removed the matter from the referee prior to the entry of a final decision. However, we agree with the circuit court's ruling on the question of the sufficiency of the Commission's findings of fact.

Initially, the trial court felt that the Commission usurped the referee's power to render an initial decision. However, the referee's July 15, 1994 order was a final and appealable order. The referee made findings of fact and conclusions of law, and entered a decision holding that Burch was disqualified from receiving benefits. At that point, the Commission was authorized to review the referee's decision as an appeal.

Yet more significantly, the lower court approached this case as a matter of conventional appellate procedure. In trial courts and in many administrative agencies, there is a sin-gle finder of fact who hears and weighs evidence, makes factual findings and applies the facts to the law. A reviewing body is limited to a determination of whether the factual findings are supported by substantial evidence, and whether the application of the law to the facts is clearly erroneous.

For example, workers' compensation procedure (at least prior to 1996) functions much in the same manner as the courts. After a worker applies for workers' compensation benefits, an Administrative Law Judge (ALJ) conducts a hearing, makes findings of fact, conclusions of law and determines the amount of the award, if any. On appeal, the Workers' Compensation Board sits as a true appellate body. The Board cannot consider additional evidence, or second-guess the findings made by the ALJ. The Board determines whether the evidence is sufficient to support a particular finding made by the ALJ, or whether the ALJ's findings are clearly erroneous in fact or law. *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687 (1992). The Board may affirm the ALJ's findings, reverse them, or remand for further findings of fact. But the Board has no independent fact-finding authority. The function of further review of the Board in the Court of Appeals is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. *Id.* at 687–88.

The trial court clearly approached this case from such a perspective. The court noted that "issues of weight and credibility were for the Referee to assess, as she was physically present and had the opportunity to observe the character and demeanor of witnesses." *Opinion and Order,* February 9, 1996, p. 3. The circuit court also observed, "[w]hile Ms. Burch's testimony alone could have been sufficient to support a determination in her favor, the referee was in the best position to assess her credibility and the Commission, by usurping Referee Snider's authority, removed a crucial filtering component of the process, that being the analytical observations of the trier of fact." *Id.* Both of these observations presume that the Com-

mission was limited to a determination of whether the referee's findings were unsupported by substantial evidence or were clearly erroneous.

However, the approach to fact-finding in unemployment insurance cases is substantially different. When a worker applies for unemployment insurance benefits, the application is first submitted to the Secretary of the Division for Unemployment Insurance for an initial determination. The employer may either accept or challenge the charge against its reserve account. On the basis of the application and the response thereto, the Secretary makes an initial determination regarding the worker's eligibility for benefits.

An aggrieved party may then appeal to the referee. KRS 341.420(2). The referee conducts a hearing, receiving testimony from witnesses and reviewing documentary evidence. The referee then issues findings of fact, conclusions of law and final order with respect the worker's eligibility for unemployment insurance benefits. KRS 341.420(4).

Following a referee decision, an aggrieved party may appeal to the full Commission. In addition, the Commission has authority "to remove to itself or transfer to another referee the proceedings on any claims pending before a referee." KRS 341.430(1). Unlike a conventional appellate body, the Commission conducts a *de novo* review of applications. As explained in the statute:

> The commission may on its own motion affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence, or may permit any of the parties to such decision to initiate further appeals before it.

KRS 341.430(1).

"Except in instances where the commission orders cases removed to it from a referee, all appeals to the commission may be heard upon the records of the division and the evidence and exhibits introduced before the referee." 787 KAR 1:110(2)(2)(a); formerly 903 KAR 5:130(2)(2)(a). Thus, while the Commission generally does not hear evidence directly from witnesses, it has the authority to enter independent findings of fact. 787 KAR 1:110(2)(4)(a). Necessarily, such authority allows the Commission to judge the weight of the evidence and the credibility of witnesses and to disagree with the conclusion reached by the referee.

We find that the Commission followed the proper procedures in this case. The referee issued a final and appealable order on July 15, 1994. In its order of August 19, 1994, the Commission remanded the matter to the referee with directions to conduct an additional hearing. The Order further stated that the case was to be returned to the Commission following that hearing for the Commission's review and decision. This procedure is clearly authorized by the last sentence of KRS 341.430(1), which states: "The commission may remove to itself or transfer to another referee the proceedings on any claims pending before a referee." Consequently, the trial court erred in concluding that the Commission exceeded its authority by removing the case from the referee.

Burch and the Commission next argue that the trial court erred in finding that the Commission's findings of fact were not supported by substantial evidence, and that the Commission incorrectly applied the law to the facts. The standard of review before the circuit court and before this Court is the same. Judicial review of the acts of an administrative agency is concerned with the question of arbitrariness. *American Beauty Homes Corp v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450, 456 (1964). The findings of fact of an administrative agency which are supported by substantial evidence of probative value must be accepted as binding by the reviewing court. *Kosmos Cement Co. v. Haney,* Ky., 698 S.W.2d 819, 820 (1985). The court may not substitute its opinion as to the weight of the evidence given by the Commission. *McCracken County Health Spa v. Henson,* Ky.App., 568 S.W.2d 240, 242 (1977). Upon determining that the Commission's findings were supported by substantial evidence, the court's review is then limited to determining whether the Commission applied the correct rule of law. *Southern Bell Telephone & Telegraph Co. v.*

*Kentucky Unemployment Insurance Commission*, Ky., 437 S.W.2d 775, 778 (1969).

█ The initial question before the court is whether the Commission's findings of fact were supported by substantial evidence. The parties do not dispute the Commission's factual findings regarding the underlying events. Although Burch states that she does not remember the incident between herself and Ball, she does not dispute that those events occurred. Viewing Burch's actions on April 28, 1994 on their own, in the absence of any mitigating circumstances, her insubordinate behavior would constitute "misconduct related to employment" within the meaning of KRS 341.360(7). *Kentucky Unemployment Insurance Commission v. Dye*, Ky. App., 731 S.W.2d 826, 828 (1987).

Rather, Burch and the Commission both take the position that Burch's actions on April 28, 1994 were the result of a mental condition, over which she had no control. They argue that Burch's actions lacked the degree of culpability necessary to constitute "misconduct related to employment." The trial court disagreed, finding that Burch had failed to present sufficient evidence to justify her misconduct on the basis of her medical condition. The trial court concluded that Burch failed to establish a causative nexus between her behavior on April 28 and her disorder. We agree.

Since Burch was asserting a mitigating circumstance which justified or explained her admitted misconduct, she had the burden of proving that her medical condition rendered her actions involuntary. *Broadway & Fourth Avenue Realty Co. v. Allen*, Ky., 365 S.W.2d 302, 304 (1963). In support of her contention, Burch presented a copy of a 1991 "Attending Physician's Statement" outlining her medical diagnosis and associated symptoms; and she presented insurance claim forms reflecting her treatment. She also testified regarding her treatment and state of mind on April 26 to 28, 1994.

The Commission had sufficient evidence to find that Burch had been diagnosed with a dissociative disorder and that she was receiving treatment for that condition, including medication. However, she presented no medical testimony detailing the extent of her condition in 1994. Indeed, Burch presented no medical testimony that her outburst on April 28 was the type of action which is associated with her condition. In the absence of medical testimony, we conclude that the Commission lacked substantial evidence supporting its conclusion that Burch's actions were involuntary. *Broadway & Fourth Avenue Realty Co. v. Crabtree*, Ky., 365 S.W.2d 313, 314–15 (1963).

█ Lastly, we recognize that behavior which is beyond the control of an employee does not necessarily constitute misconduct so as to disqualify the employee from receiving unemployment benefits. *Egnew v. Kentucky Unemployment Insurance Commission*, Ky. App., 687 S.W.2d 866 (1984). The test for determining misconduct is whether the employee's actions evidence a "wilful and wanton disregard of the employer's interests." *Shamrock Coal Co. v. Taylor*, Ky.App., 697 S.W.2d 952, 954–55 (1985). The employer has the burden of proving that the employee's actions constituted misconduct. *Id.*

█ However, if an employee asserts that her culpability for admitted misconduct is diminished or vitiated due to a disease or mental condition, then she bears the burden of proof. *Crabtree*, 365 S.W.2d at 314–15. Burch had the burden of proving both the existence of her dissociative disorder and the relationship between her condition and her behavior on April 28, 1994. While she presented sufficient evidence to prove the former, we agree with the trial court that she failed to prove the latter element. Consequently, the trial court correctly found that the Commission's ruling was unsupported by substantial evidence and therefore was arbitrary.

Accordingly, the judgment of the Jefferson Circuit Court *is affirmed in result.* This matter is remanded to the Kentucky Unemployment Insurance Commission with directions to enter an order consistent with this opinion.

All concur.