**MASONIC HOMES OF KENTUCKY, INC., Appellant,**

**v.**

**KENTUCKY UNEMPLOYMENT IN- SURANCE COMMISSION and Angela J. Phillips, Appellees.**

**No. 2011–CA–001226–MR.**

Court of Appeals of Kentucky.

Oct. 19, 2012.

---

Darryl W. Durham, Victoria E. Boggs, Louisville, KY, for appellant.

Amy F. Howard, Frankfort, KY, for appellee, Kentucky Unemployment Insurance Commission.

No brief filed for appellee, Angela J. Phillips.

Before ACREE, Chief Judge;
CLAYTON and KELLER, Judges.

## OPINION

CLAYTON, Judge:

Masonic Homes of Kentucky, Inc. appeals from a Jefferson Circuit Court Memorandum and Order affirming a Kentucky Unemployment Insurance Commission decision. At issue is whether the Commission correctly determined that Angela J. Phillips was discharged from her employment by the Masonic Homes for reasons other than misconduct connected with the workplace.

Angela J. Phillips began working for Masonic Homes as a service assistant on May 26, 1996. Her job duties included washing dishes, working on the tray line, and assisting with the service of food to residents of the Masonic Homes. On January 17, 2009, after becoming involved in an argument with a line staff supervisor, Phillips lost her temper and hit and bit herself. Her supervisor, Gary McCurdy, suspended her for five days, and warned her that if she reacted in such a manner again her employment would be terminated. Phillips was allowed to take a medical leave of absence to receive outpatient treatment and therapy for anxiety and mood disorder at Ten Broeck Healthcare. According to McCurdy, Phillips was a stellar employee for a short period after she returned to work, but then she again argued with a co-worker and bit herself on the hand. McCurdy observed the bite

marks on her hand and sent her home. She was discharged on April 10, 2009.

Phillips filed a claim for unemployment insurance benefits, claiming that Masonic Homes had accused her of having a "blow-up" and biting herself when in fact she had not. On May 22, 2009, the Division of Unemployment Insurance issued a Notice of Determination, finding that Phillips had displayed an inappropriate attitude, that her actions were in intentional disregard of her employer's interests and, therefore, her discharge was for misconduct connected with the work. As a result she was disqualified from receiving unemployment insurance benefits.

Phillips filed an appeal. Following an administrative hearing, the referee found that Phillips suffered from a psychological condition which prevents her from appreciating the harm to herself of her conduct, that she copes with stress in an abnormal manner, that she harmed herself without meaning to and without knowing her actions were inappropriate for the workplace, and that Phillips did not commit misconduct in connection with her work because she was unable to control her reaction to stress and anxiety.

Following an appeal by Masonic Homes, the Kentucky Unemployment Insurance Commission affirmed the decision of the referee that Phillips's actions were not misconduct disqualifying her from the receipt of benefits.

■ Masonic Homes then filed a complaint in Jefferson Circuit Court requesting review of the Commission's order. The circuit court entered a Memorandum and Order affirming the order of the Commission. This appeal followed.

Judicial review of the acts of an administrative agency is concerned with the question of arbitrariness. The findings of fact of an administrative agency which are supported by substantial evidence of probative value must be accepted as binding by the reviewing court. The court may not substitute its opinion as to the weight of the evidence given by the Commission. Upon determining that the Commission's findings were supported by substantial evidence, the court's review is then limited to determining whether the Commission applied the correct rule of law.

*Burch v. Taylor Drug Store, Inc.,* 965 S.W.2d 830, 834 (Ky.App.1998) (internal citations omitted).

The pertinent statute provides that "[a] worker shall be disqualified from receiving [unemployment insurance] benefits" if the worker "[h]as been discharged for misconduct[.]" KRS 341.370(1), (b). The statute also provides the following non-exhaustive definition of "discharge for misconduct:"

"Discharge for misconduct" as used in this section shall include but not be limited to, separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; knowing violation of a reasonable and uniformly enforced rule of an employer; unsatisfactory attendance if the worker cannot show good cause for absences or tardiness; damaging the employer's property through gross negligence; refusing to obey reasonable instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work.

KRS 341.370(6)

■ In general, the test for determining misconduct is "whether the employee's ac-

tions evidence a 'wilful and wanton disregard of the employer's interests.' " *Burch,* 965 S.W.2d at 835 (internal citation omitted).

The Commission acknowledged that Phillips's actions would normally constitute misconduct, but determined that an exception should apply, in the form of a mitigating circumstance which justified or explained her admitted misconduct. Although the employer bears the initial burden of proving misconduct, "if an employee asserts that her culpability for admitted misconduct is diminished or vitiated due to a disease or mental condition, then she bears the burden of proof." *Id.* The employee bears the burden "of proving both the existence of her ... disorder and the relationship between her condition and her behavior[.]" *Id.*

Masonic Homes argues that Phillips does not qualify for the mitigation exception because she has not admitted that the misconduct took place. Phillips denied the allegations of misconduct in her application for benefits, and also denied having temper tantrums and biting herself when she testified at the hearing. Masonic Homes contends that, because she has consistently denied the conduct at issue, she should not have been given an opportunity to mitigate, justify or explain her actions through any assertion of a medical condition or otherwise.

But the record is replete with evidence that Phillips admitted to the misconduct. In a form submitted by her supervisor, McCurdy, to the Division of Unemployment Insurance, McCurdy wrote the following description of the final incident that led to the discharge: "Angela stated 'I know I should not have thrown a temper tantrum.' I also asked Angela if she had been biting herself. She stated 'Yes.' " At the hearing before the referee, McCurdy testified that Phillips admitted her misconduct to him. When he was asked whether she disputed the allegation against her, he testified that she said, "Yes, I did throw a tantrum. Yes, I did bite myself." Also at the hearing, Phillips testified without elaboration that she had made these admissions to McCurdy. "As the fact-finder, the KUIC [Kentucky Unemployment Insurance Commission] has the exclusive authority to weigh the evidence and the credibility of the witnesses." *Thompson v. Kentucky Unemployment Ins. Comm'n,* 85 S.W.3d 621, 626 (Ky.App. 2002). The Commission was fully entitled to rely on this evidence presented by McCurdy as proof that Phillips had admitted to the misconduct, even though she subsequently denied it.

Next, Masonic Homes argues that there was insufficient evidence to support the Commission's finding that Phillips has "a psychological anxiety condition which prevents her from constructively coping with stressful situations such as an argument" and that she "responds to her anxiety by harming herself."

Phillips placed into evidence her Outpatient Discharge/Treatment Plan from Ten Broeck, indicating that she had been diagnosed with mood disorder and anxiety, and that she had completed work on "anger management and coping skills." The fact that Phillips was being treated for anxiety at a mental health facility, with her employer's approval, constitutes adequate evidence to support the finding that she suffers from a "psychological anxiety condition." Furthermore, in light of the fact that Phillips bit herself again, knowing that this behavior had led to her initial suspension fully supports the finding that she copes with stress in an abnormal manner, and that her actions are involuntary.

Masonic Homes further contends, relying on *Burch*, 965 S.W.2d 830, that there was no medical testimony to support the key finding that Phillips's alleged condition actually caused her misconduct at work. When Burch was hired in 1992, she had already been diagnosed with a dissociative disorder and major depression with psychotic features. Her employer was aware of her condition and accommodated her therapy schedule. Almost two years later, Burch became upset and withdrawn at work. She began yelling at the pharmacist and refused to leave when he told her to go home. This Court held that Burch's claim for unemployment insurance benefits failed because "she presented no medical testimony detailing the extent of her condition in 1994[,] ... [and] no medical testimony that her outburst ... was the type of action which is associated with her condition." *Id.* at 835.

It is undisputed that after the first incident, when Phillips lost her temper and bit herself, Masonic Homes granted her a leave of absence explicitly to obtain professional treatment in the belief that such treatment could mitigate the condition that was causing her objectionable behavior. Shortly after her return to work, she committed exactly the same behavior and was discharged. Under these facts, when even the employer believes that there is a psychological condition causing certain specific behaviors at work, and encourages an employee to receive psychological treatment for such a condition, medical testimony linking the condition to specific behavior is not essential as it was in *Burch*.

We affirm the Jefferson Circuit Court Memorandum and Order.

ALL CONCUR.