RENDERED: FEBRUARY 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0269-MR

COMMONWEALTH OF KENTUCKY,
KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION                                    APPELLANT


APPEAL FROM BOYD CIRCUIT COURT
v.          HONORABLE GEORGE W. DAVIS, III, JUDGE
ACTION NO. 20-CI-00365


TIMOTHY S. HART, MD P.S.C. D/B/A
HART FAMILY CARE AND BETH
HULETT                                                           APPELLEES


OPINION AND ORDER
AFFIRMING, IN PART, REVERSING, IN PART, AND REMANDING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND GOODWINE, JUDGES.

GOODWINE, JUDGE: The Kentucky Unemployment Insurance Commission

("Commission") appeals the judgment of the Boyd Circuit Court reversing its

decision and determining Beth A. Hulett ("Hulett") is ineligible for unemployment

benefits due to misconduct. We affirm, in part, reverse, in part, and remand. We

also grant the motion of Timothy S. Hart, MD P.S.C. d/b/a Hart Family Care ("Hart Family Care") to strike portions of the Commission's brief.

Hulett was hired as a receptionist by Hart Family Care in 2017. Karen Hart ("Hart") co-owns the business. Jackie Henderson ("Henderson") was Hulett's supervisor.

The Commission summarized the pertinent facts as follows:

On January 8, 2020, Ms. Hart came into the office to address a computer issue. When she arrived, Ms. Henderson spoke with Ms. Hart about some concerns with the office telephone system. Ms. Hart told Ms. Henderson that she had also tried to call the office and had gotten a message that the mailbox was full. [Hulett] overheard them talking about the phone system and told Ms. Hart that she did not believe that the patients could not get through because of a full voicemail box because she frequently checked the voicemail. Ms. Hart ask[ed] [Hulett] if [Hulett] was calling her a liar. This is when it "got ugly." [Hulett] responded that she was not calling Ms. Hart a liar, but that no one else in the office had received any complaints. [Hulett] said it would have to be the system because she answers her phone calls. Ms. Hart told [Hulett] that she was not saying that [Hulett] was not doing her job. Ms. Hart said she was just conveying that she had had two complaints.

Ms. Henderson also felt like Ms. Hart thought her staff was not answering the phone, and was expressing to Ms. Hart that she and her staff answered the phone. Ms. Hart told Ms. Henderson and [Hulett] that she felt like she was being bombarded. Ms. Henderson told Ms. Hart she was not bombarding her, she was just asking what could be going on with the phone calls. Both Ms. Hart and [Hulett] had been raising their voices. [Hulett] went to check on a client, and the situation calmed down.

-2-

Ms. Hart then went into Ms. Henderson's office, with the door open, and asked Ms. Henderson when was the last time that they had a staff meeting. Ms. Henderson indicated it had been a while. Ms. Hart said that she wanted to have a staff meeting because of an incident that occurred with a patient and because she was "not going to tolerate an employee talking to her like that."

[Hulett] overheard Ms. Hart. She went into the office and told Ms. Hart that she was not being disrespectful, that she was "giving to her what she was given." Both [Hulett] and Ms. Hart were getting loud, and Ms. Henderson asked them to stop because there were patients in the office. Ms. Henderson told them both that they were being "ridiculous." Ms. Hart asked [Hulett] to come into the office, and she shut the door.

[Hulett] told Ms. Hart that Ms. Hart was having a bad day and taking it out on her. Ms. Hart told [Hulett] that it was not the computer, that it was [Hulett's] attitude. Then [Hulett] told Ms. Hart that she "was lying" then because she had previously indicated the computer issue had her upset. [Hulett] and Ms. Hart were both speaking over each other. Ms. Hart asked [Hulett] to be quiet and let her talk. Ms. Hart asked [Hulett] if she was aware that she was co-owner of this business. In a sarcastic tone, [Hulett] responded, "oh how well I know." Ms. Hart asked [Hulett] to leave, discharging her.

Record ("R.") at 116-17.

Hulett applied for unemployment benefits. Hart Family Care disputed her claim. The Office of Unemployment Insurance issued a denial of benefits on February 10, 2020. Hulett appealed the denial and, after a hearing, a referee

affirmed the denial of benefits because of misconduct, as defined by KRS[1] 341.370(6). Hulett then appealed to the Commission. The Commission determined Hulett's behavior was not misconduct and reversed the referee's decision.

Hart Family Care appealed the Commission's decision to the circuit court, as allowed under KRS 341.450(1). The court reversed the Commission's decision, finding it committed reversible error. The court relied on a personnel policy, signed by Hulett, which, in part, stated, "insubordination will not be tolerated and warrants immediate dismissal." R. at 59. The court found Hulett's behavior was insubordinate and qualified as misconduct. The Commission appealed.

> Judicial review of a decision of the [Commission] is governed by the general rule applicable to administrative actions. If the findings of fact are supported by substantial evidence of probative value, then they must be accepted as binding and it must then be determined whether or not the administrative agency has applied the correct rule of law to the facts so found. Substantial evidence has been defined as evidence which has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record. An agency's findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record. If the reviewing court

---

[1] Kentucky Revised Statutes.

-4-

> concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed.

*Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 245-46 (Ky. 2012) (internal quotation marks and citations omitted).

Before determining the merits of the Commission's appeal, we will consider Hart Family Care's motion to strike portions of the Commission's brief. The Commission alleges, in part, that the circuit court was prohibited from considering the personnel policy because it was not made part of the record before the referee. Hart Family Care moved to strike this portion of the Commission's brief as unpreserved.

Appellant briefs must include, "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." RAP[2] 32(A)(4).[3] The Commission's brief includes a preservation statement. However, the pages cited to do not contain any mention of the personnel policy. Furthermore, our review of the record reveals the Commission did not raise its argument before the circuit court. This Court "is without authority to review issues not raised in or decided by

---

[2] Kentucky Rules of Appellate Procedure.

[3] Hart Family Care cites Kentucky Rules of Civil Procedure ("CR") 76.12(4)(c)(v). Since the filing of the motion, the Rules of Appellate Procedure went into effect. RAP 32(A)(4) and CR 76.12(4)(c)(v) include identical language regarding preservation.

the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citation omitted). Because this issue was not preserved and was not first raised before the circuit court, we will not address it. On this basis, we grant the motion and strike portions of the Commission's brief which claim the personnel policy was not properly made part of the record before the referee.

We will now consider the merits of the Commission's appeal. The Commission argues: (1) the court incorrectly applied the statutory standard of misconduct rather than the common law standard; (2) the Commission's findings were supported by substantial evidence of probative value; and (3) the court substituted its judgment for that of the Commission.

A claimant is disqualified from receiving benefits where she has been discharged for misconduct. KRS 341.370(1)(b). The statute defines "discharge for misconduct." KRS 341.370(6). Where a claimant's behavior does not meet the statutory definition, the Commission will determine whether the conduct meets the common law definition for misconduct. *Cecil*, 381 S.W.3d at 247. The courts have established that misconduct requires a determination of "whether the employee's actions evidence a [willful] and wanton disregard of the employer's interests." *Masonic Homes of Kentucky, Inc. v. Kentucky Unemployment Ins. Comm'n*, 382 S.W.3d 884, 886-87 (Ky. App. 2012) (citation omitted). The circuit

court, like the Commission, applied the common law standard for misconduct. We affirm the circuit court's application of the common law definition of misconduct.

However, the court erred by determining the Commission's finding (that Hulett was not discharged for misconduct) was unsupported by substantial evidence of probative value. The Commission found "it has not been shown that [Hulett's] behavior was motivated by or the result of a willful or wanton indifference for the work, the employer's interests, or duties owed such that the common-law standard for misconduct is met." R. at 119. Based on the evidence, the Commission determined Hulett was defending her job. In reaching these conclusions, the Commission relied on Henderson's testimony, which it found to be "a very fair, rational, detailed, and even-handed account of what had occurred[.]" R. at 118. Henderson testified on behalf of Hart and the Commission found:

> Ms. Henderson testified that both [Hulett] and Ms. Hart were acting in an inappropriate manner. It is clear from her testimony that both women were speaking to the other in an unprofessional manner. They were both upset and defensive. The exchange was initiated by Ms. Hart discussing the phone issue in a manner that made both Ms. Henderson and [Hulett] feel the need to defend themselves. Ms. Henderson testified that things "got ugly" when Ms. Hart asked [Hulett] if [Hulett] thought she was a liar. Ms. Hart then stated that she felt "bombarded" by Ms. Henderson and [Hulett]. Based on the testimony of record, the incident was initiated by Ms. Hart's demeanor when first discussing the situation, and

> then further ignited by Ms. Hart asking [Hulett] if
> [Hulett] thought Ms. Hart was a liar.

R. at 118-19.

It is the exclusive responsibility of the Commission to judge "the credibility of the witnesses, the weight given [to] the evidence, or the inferences to be drawn from the evidence." *Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnote omitted). On this basis, the Commission was within its authority to give weight to Henderson's testimony. This substantial evidence supports the Commission's decision, making it binding. *See Cecil*, 381 S.W.3d at 245 (citation omitted).

Finally, a court cannot substitute its judgment for that of the Commission. *Masonic Homes*, 382 S.W.3d at 886 (citation omitted). The courts must uphold the Commission's findings where they are supported by substantial evidence, even where conflicting evidence exists in the record. *Cecil*, 381 S.W.3d at 245-46. "A court's function in administrative matters is one of review, not reinterpretation." *Thompson*, 85 S.W.3d at 624 (footnote omitted).

The circuit court's decision relies on the fact that Hulett signed a personnel policy which included a prohibition on insubordination. Regardless of whether this policy was made part of the record before the referee, it is not determinative. Insubordination is not defined in the policy nor the court's decision. However, BLACK'S LAW DICTIONARY (11th ed. 2019), defines it as "[a]

willful disregard of an employer's instructions[.]" This definition is substantially similar to that of misconduct, which, after detailed fact-finding, the Commission concluded had not been proven by Hart Family Care. *See Alford v. Kentucky Unemployment Ins. Comm'n*, 568 S.W.3d 367, 370 (Ky. App. 2018) ("employer bears the burden of proof establishing that the claimant should be disqualified from receiving benefits because of misconduct"). The circuit court erred by substituting its own judgment for that of the Commission.

Based on the foregoing, the order of the Boyd Circuit Court is affirmed, in part, reversed, in part, and remanded with instructions to enter an order affirming the decision of the Commission.

<u>ORDER</u>

IT IS HEREBY ORDERED that Hart Family Care's motion to strike portions of the Commission's brief is GRANTED as set forth herein.

ALL CONCUR.

ENTERED: <u>February 10, 2023__</u>  _____
JUDGE, COURT OF APPEALS

-9-

BRIEF FOR APPELLANT:

Andrew T. Bryson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Richard W. Martin
D. Luke Vincent
Ashland, Kentucky