**RAILROAD COMMISSION of Kentucky, Appellant,**

**v.**

**The CHESAPEAKE AND OHIO RAILWAY COMPANY, Appellee.**

Court of Appeals of Kentucky.

Feb. 2, 1973.

Chat Chancellor, Frankfort, for appellant.

Porter M. Gray, Gray, Woods & Cooper, Ashland, for appellee.

CATINNA, Commissioner.

The Chesapeake and Ohio Railway Company made application to the Railroad Commission of Kentucky for permission to close its freight agency at Hitchins, Carter County, Kentucky and transfer the duties performed by the agency to its freight agency at Olive Hill. After a hearing the Commission entered an order denying the application. C & O refused to comply with the order, and the Commission filed an action in the Franklin Circuit Court to enforce compliance. The court reversed the Commission and ordered that C & O discontinue its agency at Hitchins and operate it as a non-agency station through Olive Hill. The Commission appeals.

It is admitted by C & O that the Hitchins station is profitable and that the revenue generated exceeded cost "quite a bit." The company sought discontinuance, however, as an economy measure claiming that it would save $20,000 per year.

Witnesses for C & O testified that the patrons of the Hitchins station would be served as conveniently by the Olive Hill station. However, it was admitted that Hitchins was some nineteen miles from Olive Hill and that in order for the present patrons of Hitchins to obtain service it would be necessary for them to either telephone or make a trip to Olive Hill each time they desired to use the facilities of the Hitchins station. There was evidence that the telephone service was poor, and although the round trip of some forty miles to Olive Hill could be made on a surfaced road, it was time consuming.

The hearing was extensive. A number of witnesses testified in opposition to the application. Evidence was that the Hitchins freight agency was used in the shipment of fertilizer into the area as well as surplus commodities for distribution to schools in the surrounding communities. It was also shown that the agency was used by a lumber company for the shipment of finished lumber, chips to a paper mill, and other wood products. Some logs and other unprocessed lumber were also shipped.

The primary source of revenue for the Hitchins agency was the General Refractories Company, a manufacturer of bricks, which provided 90 to 95% of the entire business of the Hitchins agency.

A union representative further testified that the number of cars handled through the agency had been increasing from year to year. The witnesses all agreed that the removal of the agency would result in the loss of adequate freight service to the area.

C & O and the court have placed substantial emphasis upon the fact that General Refractories did not oppose the application, particularly in view of the fact that it

was responsible for 95% of the business and revenue of the station.

Actually, there was no reason for General Refractories to protest, as the record reveals that C & O had previously agreed that it would provide the company with the same, or better, services as those then being received through the Hitchins agency. Rather than being inconvenienced, the company would be better served by the change. No such agreement had been offered other patrons of Hitchins prior to the hearing.

When the reason for General Refractories' failure to protest is placed in proper perspective, it must be concluded that the minority (5% of the business and revenue) which did protest could not be truly so classified, and the apparent situation where the "tail wags the dog" becomes nonexistent.

The Commission, in denying the application, considered those items of evidence above stated in regard to the profit being made by the station, the protests by the other users, and the inconvenience that would arise from requiring Hitchins patrons to use the Olive Hill agency.

The Commission found:

"1. The Hitchins freight agency is now being patronized by the shipping and receiving public to the extent that a profit is being made by the Railway Company.

2. It is in the public interest and there now exists a public need for the continued operation of the Railroad freight agency at Hitchins, Kentucky.

3. It is not likely that an equal service can be rendered to the public if the agency functions should be transferred to Olive Hill, Kentucky."

In Louisville & Nashville R. Co. v. Commonwealth, Ky., 300 S.W.2d 777 (1956), we stated:

"The Railroad Commission is an administrative body acting in a legislative capacity under constitutional authorization. * * * The review of the action of such an administrative body is limited to determining whether there is substantial evidence to support its findings and conclusions."

It follows, therefore, that our review in this case is limited to the narrow question of whether there was any substantial evidence to support the findings of the Railroad Commission. Railroad Commission of Kentucky v. Illinois Central Railway Company, Ky., 265 S.W.2d 797 (1954).

In Commonwealth v. Illinois Central Railroad Company, Ky., 358 S.W.2d 533 (1962), there was involved the question of the discontinuance of an agency. Primary consideration was given to evidence about the continued financial losses of the agency and the declining business. Considering these continued and prolonged losses of both revenue and business, permission was granted to close the agency, although the Commission had disallowed the application.

In Erie Lackawanna R. Company v. Pennsylvania Public Utility Commission, 206 Pa.Super. 523, 214 A.2d 268 (1965), the court outlined factors to be considered in permitting the discontinuance of an agency station. There it was said:

"The factors to be considered in these cases are (1) the volume and the nature of the business transacted at the stations; (2) proximity and accessibility of other stations; (3) the ratio of cost of maintaining the station agency (including both out-of-pocket and overall expense) to revenues received from the station; (4) the inconvenience to the public resulting from removal of the agent; and (5) the nature of the service remaining or to be substituted."

Reviewing the evidence heard by the Commission in light of the factors developed in the two above-cited cases, this

766

court is of the opinion that there was substantial evidence before the Kentucky Railroad Commission to support its findings and order.

In determining whether the findings of the Commission were substantial, a court is not free to substitute its judgment for that of the Commission as to the weight of the evidence or the inferences to be drawn from that evidence. Cf. Kentucky State Racing Commission v. Fuller, Ky., 481 S.W.2d 298 (1972).

The judgment is hereby reversed with directions to set it aside and enter one sustaining the order of the Kentucky Railroad Commission.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.