RENDERED: JUNE 25, 2009
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000126-DG

FINAL

DATE 7/16/09 _Kelly Klaber_ D.C.

LES BROWNLEE, ACTING SECRETARY,
U.S. DEPARTMENT OF THE ARMY; AND
UNITED STATES OF AMERICA                                    APPELLANTS


V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2005-CA-002255-MR
HARDIN CIRCUIT COURT
NOS. 03-CI-02191 AND 04-CI-00454


COMMONWEALTH OF KENTUCKY,
KENTUCKY UNEMPLOYMENT INSURANCE
COMMISSION; CHARLOTTE J. BOOTHE;
RITA F. HOCKMAN; CAROLYN J. JONES;
SHEILA F. LUCAS; PAULA M. OLIVE;
REBECCA J. YATES; AND BEVERLEY Y.
HOUSE                                                        APPELLEES


**OPINION OF THE COURT BY JUSTICE NOBLE**

**REVERSING**

The Appellants, Les Brownlee (Acting Secretary, U. S. Department of the Army) and United States of America, appeal the Opinion of the Court of Appeals affirming the Hardin Circuit Court's ruling that the Kentucky Unemployment Insurance Commission (KUIC) properly awarded unemployment benefits to the individual Appellees. Because the Appellees voluntarily left their employment by taking early retirement and a cash incentive, and cannot establish that they did so because of good cause attributable to the employment, the Opinion of the Court of Appeals is reversed.

# I. Background

In 2002, the Appellants (Army) decided to hire a private contractor through the bid process to perform the job functions of approximately 160 civilian employees, among whom were the individual Appellees. In February, 2003, the Army did a "mock" Reduction in Force (RIF) that told the employees how they would be affected when the contractor took over. The Appellees' jobs were being abolished as such, but they were offered continued employment, though their job duties would change. Their salaries would remain the same for two years, and then would adjust according to some percentage of the cost of living index. However, the Army could not guarantee that there would be any work after July 31, 2003, when the contractor took over.

That same month, the Army offered a Voluntary Early Retirement Program which included a Voluntary Separation Incentive (VSI) of $25,000 cash. If an employee's position had been abolished, and she was eligible for early retirement, then this option could be taken and the employee would not be a part of the RIF.

The mock RIF had four categories of change for the various employees, but the individual Appellees were all eligible for early retirement and the VSI. According to the Order of the KUIC, they had two weeks to make their decision. All of them chose the early retirement and cash incentive.

Subsequently, each individual Appellee filed a claim for unemployment benefits, all of which were at first denied. This began the appeals, and the Appellees have prevailed through the KUIC, the Hardin Circuit Court, the Court of Appeals, and are now before this Court on discretionary review.

2

## II. Analysis

Unemployment benefits are established by statute, and administered by the Kentucky Unemployment Insurance Commission. Under the facts of this case, KRS 341.370(1)(c) is specifically controlling as it deals with when an employee who has voluntarily left the job can receive unemployment benefits. In fact, the statute sets forth when an employee is <u>disqualified</u> from receiving benefits, and only provides an exception when the employee has voluntarily left employment if there is "good cause attributable to the employment."[1]

The parties have addressed the issue before the Court—good cause attributable to the employment—as a case of first impression. However, there have been several appellate decisions on this issue since this Court announced when good cause attributable to the employment applied, in order to require the payment of unemployment benefits, in <u>Kentucky Unemployment Ins. Comm'n v. Murphy</u>, 539 S.W.2d 293 (Ky. 1976). It is true, though, that this particular fact situation involving a RIF has not been specifically addressed.

In <u>Murphy</u>, a waitress who refused to comply with the employer's dress code was found not to have "good cause" attributable to the employment to quit her job, and thus was not entitled to unemployment benefits. The Court held that good cause can be found "only when the worker is faced with

---

[1] KRS 341.370(1)(c) provides:
> (1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:
> (c) He has left his most recent suitable work or any other suitable work which occurred after the first day of the worker's base period and which last preceded his most recent work voluntarily without good cause attributable to the employment. . . .

3

circumstances so compelling as to leave no reasonable alternative but loss of employment." Id. at 294. Since that time, our appellate decisions have offered little consistency to establish a test as to what would constitute sufficiently compelling circumstances, attributable to the employment, that would make quitting the job the only reasonable alternative.

For example, this Court has found good cause attributable to the employment when an employer moved the business to another state, Brock v. Kentucky Unemployment Ins. Comm'n, 693 S.W.2d 69 (Ky. App. 1989), but the Court of Appeals has said that acts of racial harassment at work were not so compelling as to require the payment of benefits after an employee quit because of them, Thompson v. Kentucky Unemployment Ins. Comm'n, 85 S.W.3d 621 (Ky. App. 2002). Since the vast majority of reported cases on this issue are from the Court of Appeals, this Court has had scant opportunity to address whether Murphy is being applied as intended. However, these two cases illustrate that the test is not as clear as it can be.

## A. "Good Cause Attributable to the Employment"

Analysis must begin with the plain language of the statute, which requires "good cause" to leave one's job to be "attributable to the employment." Inherent in that language is the idea that work conditions must be sufficiently bad that the employee can reasonably feel compelled to quit. This concept has been expressed in civil rights cases as "constructive discharge," and this Court agrees with the trial court that the terminology is not used in the unemployment insurance legislation. Yet that is precisely the effect of establishing good cause attributable to the employment in order to obtain

4

unemployment benefits. The employee must establish that the conditions of the job are such that any reasonable person would believe he had no alternative but to quit. This is the standard established in Murphy.

This Court has also spoken to another term used in the statute: "voluntarily." In Kentucky Unemployment Ins. Comm'n v. Young, 389 S.W.2d 451 (Ky. 1965), the court determined that separation is voluntarily initiated by the employee when the act of leaving is "freely given" and proceeds from personal choice and consent. Obviously, the facts must be considered anew in each case, but they must be viewed through the lens of what the statute requires when an employee makes the choice to leave the job and then seeks unemployment benefits.

If an employee makes the choice to leave the job from among several options available to her, the idea that she was compelled to quit by the conditions of the job is suspect. If she then seeks to be paid unemployment benefits after she has made her choice, it is appropriate that she have the burden of establishing that she had good cause attributable to the employment to leave before she can prevail.

The most analogous cases to this one that this Court has decided are Kentucky Unemployment Ins. Com'n v.Kroehler Mfg. Co., 352 S.W.2d 212 (Ky. 1961), and Kentucky Unemployment Ins. Comm'n v. Reynolds Metals Co., 360 S.W.2d 746 (Ky. 1962). In these cases, employees voluntarily participated in a plan or were party to a collective bargaining agreement that approved a retirement plan which provided for mandatory retirement at a certain age. By participating in the benefits of the agreement, the employees also accepted the

5

mandatory retirement age. This Court held that when the appropriate age was reached, the employees entered into a voluntary retirement, and thus there was not good cause attributable to the employment sufficient to allow unemployment benefits. Germane to that decision was the employees' freedom to choose. In Kroehler, the Court commented on early retirement, and referenced an earlier foreign case, Campbell Soup Company v. Board of Review, 100 A.2d 287 (N.J. 1953), which held that an employee electing to retire before full retirement age did so voluntarily, whatever his or her reason.

That an employee simply does not like job conditions or the proposed terms of an agreement or offer from the employer does not rise to the level of compelling an employee to leave the job. The difference in perspective is whether the employee is driven away, versus simply choosing to leave for greater satisfaction. In Kentucky Unemployment Ins. Comm'n. v Day, 451 S.W.2d 656 (Ky. 1970), this Court denied unemployment benefits to a production line worker who quit because he simply believed that he could not work on the newly converted line, a subjective belief. Subjective views about the conditions of employment will not establish good cause attributable to the employment. As Murphy established, the conditions must be such that the objective, reasonable person would agree that the circumstances compel the belief that there is no reasonable alternative to leaving the job.

Applied to this case, this reasoning leads to the conclusion that the Appellees cannot establish good cause attributable to the employment sufficient to entitle them to unemployment benefits. The Army gave all the employees notice in February, 2003, that their employment status would

6

change through the "mock" RIF.  All the Appellees were told that they would remain employed with their salaries guaranteed for two years, though they would be reassigned, and no work was guaranteed after July 31, 2003.  That same month, the VSI was offered which allowed employees whose current jobs had been abolished, and who were eligible, to take early retirement and receive a lump sum incentive payment of $25,000.

At that point, the Appellees had these choices:  continue working, accept any new placement, and either retire or draw unemployment benefits if there was no work after July 31, 2003 or if it ended in two years; take early retirement at the present time and receive an added bonus of $25,000; or quit. Either way, under the first two choices the Appellees would be receiving income, whether from working or drawing their retirement with the cash nest egg.  What they did not have was the choice of refusing both of the first two options and then receiving unemployment benefits.  If they had done that, then they would simply be quitting their employment based on the subjective view that they did not like either option offered to them, and would not be able to establish good cause attributable to the employment.  If they stayed with the job, they were to get the same salary for two years, and if at the end of that time the working conditions were such as to compel them to believe they had no choice but to leave, they could obtain unemployment benefits then.  If no work materialized after July 31, 2003, they could apply for unemployment benefits immediately.  Continuing to work would have protected their unemployment benefits rights.

7

However, by choosing early retirement and the cash incentive, the Appellees chose an alternate source of income from that which normally is obtained by working. The retirement benefits are in lieu of the salary they would make if employed. Under this scenario, they cannot be said to be "unemployed" any more than any other retiree is. Unemployment benefits are intended to bridge the gap between losing one job through no fault of the employee until the next job can be obtained. As this Court held in Barnes v. Hall, 285 Ky. 160, 146 S.W.2d 929 (1940), unemployment insurance legislation was enacted "...for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own...as a part of a national plan of unemployment compensation and social security." The money available is not unlimited, and unemployment benefits are subject to time limitations.

It is important to note that while the Appellees' choices were limited, this does not mean that the choice they made was not voluntary. Though tenuous, the working conditions were not such that they were compelled to believe they had no choice but to quit or retire, especially when in fact employment was being offered to them, or a cash bonus retirement package. That they had to choose early retirement in order to get the $25,000 cash simply embodies the essence of an incentive. It may be hard to turn down an attractive deal, but the ability to choose rests solely with the person having the option. There is no compulsion, or there would be no need for an incentive. The nature of this choice was well-expressed in Kehoe v. Minnesota Dep't of Economic Sec., 568 N.W.2d 889, 891 (Minn. Ct. App. 1997), as was cited by Appellant: "[w]hen an

8

employee has the choice of remaining employed or voluntarily resigning and receiving a bonus, the termination of his employment is without good cause attributable to his employer."

The decision to take the early retirement with the cash incentive was voluntary, and there was nothing about the work conditions, other than a subjective belief, that would lead the Appellees to feel compelled to leave their employment or to retire. This is true even though they may have felt pressure from the uncertainties, and even though they may have been partly motivated by altruism toward employees who could not retire and needed their job placement. They cannot show good cause attributable to the employment sufficient to remove the voluntary nature of their choice to retire in order to entitle them to unemployment benefits. For this reason, the decision of the Court of Appeals must be reversed.

## B. Consolidated Filing Not a Waiver

Appellants also complain that the lower courts gave short shrift to their request for review of the evidence on each individual Appellee's claim, instead generalizing the claims to apply in blanket fashion to all. The Court of Appeals noted that while the trial court had employed a net result analysis, it was the Appellants who had brought a joint complaint, and that they therefore could not be heard to complain if they got a joint ruling. This misses the point.

While this case is being reversed on the substantive issue, this Court would note for future application that if a claimant makes a claim of good cause attributable to the employment, then she bears the burden of establishing that cause through the facts and circumstances as they directly

9

relate to her.   That Appellants filed a joint appeal with the circuit court does not remove this burden.  The opinion of the circuit court is extremely well-written, and shows serious consideration of the applicable law, but does not address the specifics of the individual Appellees.  However, each was specifically addressed by the Commission, and the circuit court had the benefit of that record, as does this Court.  The record is sufficient to make the proper legal application, and for the reviewing courts to determine whether the findings of the Commission were supported by substantial evidence in the record.  On review, this Court has determined that they were not, as set forth above.

### III. Conclusion

Because the Appellees voluntarily chose early retirement and the cash incentive, and because they cannot establish that the conditions of employment were such as to compel them to believe that they had no choice but to take early retirement and thereby leave employment, the decision of the Court of Appeals is reversed.

All sitting.  All concur.

COUNSEL FOR APPELLANTS:

David L. Huber
Michael D. Ekman
Assistant U.S. Attorney
510 West Broadway, 10th Floor
Louisville, Kentucky 40202


COUNSEL FOR APPELLEE, COMMONWEALTH OF KENTUCKY, KENTUCKY
UNEMPLOYMENT INSURANCE COMMISSION:

Randall Keith Justice
Education Cabinet
Office of Legal Services
500 Mero Street
3rd Floor Capital Plaza Tower
Frankfort, Kentucky 40601

Amy O'Nan Peabody
Kentucky Retirement Systems
1260 Louisville Road
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEES, CHARLOTTE J. BOOTHE, RITA F. HOCKMAN,
CAROLYN J. JONES, SHEILA F. LUCAS AND BEVERLEY Y. HOUSE:

Mike C. Moulton
Moulton & Long, PLLC
58 Public Square
Elizabethtown, Kentucky 42701-1425


COUNSEL FOR APPELLEE, PAULA M. OLIVE:

Jerry M. Coleman
Ryan Foster Quick
Quick & Coleman, PLLC
128 West Dixie Avenue
PO Box 847
Elizabethtown, Kentucky 42702-0847

COUNSEL FOR APPELLEE, REBECCA J. YATES:

James T. Kelley
The Kelley Law Office
115 West Poplar Street
Elizabethtown, Kentucky 42701