**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION,**
Appellant

v.

**Jessica BLAKEMAN and McLane Cumberland Company,**
Appellees.

No. 2012–CA–000915–MR.

Court of Appeals of Kentucky.

June 14, 2013.

Discretionary Review Denied by Supreme Court Feb. 12, 2014.

Patrick B. Shirley, Frankfort, KY, for appellant.

No Brief for appellee.

Before ACREE, Chief Judge; LAMBERT and STUMBO, Judges.

## OPINION

LAMBERT, Judge:

Appellant, Kentucky Unemployment Insurance Commission, appeals from an order reversing its decision to deny benefits to Appellee, Jessica Blakeman. The Commission argues that the trial court erred by substituting its own view of the evidence when the Commission's decision was supported by substantial evidence. We affirm.

In 1998, Blakeman began work as a selector for McLane Cumberland, which involves pulling product from shelves and placing the product into totes. On October 12, 2010, Blakeman suffered a non-work-related stress fracture in her foot and was placed in a walking boot. McLane Cumberland does not permit workers to wear open-toed shoes on the floor for safety reasons. Blakeman was placed on leave under the Family Medical Leave Act (FMLA) until she could wear a closed-toe shoe. Starting in 2008, McLane Cumberland policy required any worker that had been off work for more than 30 days to pass a physical agility test before returning to work. The purpose of this policy was to reduce injuries to workers returning after extended leave. On November 29, 2010, Blakeman failed the physical agility test. Despite attempts to increase her strength, Blakeman again failed the physical agility test two months later. Subsequently, Blakeman was discharged from her employment.

Blakeman filed a claim for unemployment benefits. The Unemployment Referee found that Blakeman was entitled to benefits. The Commission concluded that Blakeman had voluntarily quit her job without good cause attributable to the employment and denied benefits. The Jessamine Circuit Court reversed the Commission and held that Blakeman was entitled to receive benefits. This appeal followed.

The Commission argues that the trial court erred by substituting its own view of the evidence when the Commission's decision was supported by substantial evidence. We disagree.

In *Thompson v. Kentucky Unemployment Ins. Comm'n,* 85 S.W.3d 621, 624 (Ky.App.2002), this Court set forth the applicable standard of review as follows:

The judicial standard of review of an unemployment benefit decision is whether the KUIC's findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts. Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

(Internal citations omitted). KRS 341.430(1) authorizes the Commission to "affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence, or may permit any of the parties to such decision to initiate further appeals before it." "Unlike a conventional appellate body, the Commission conducts a *de novo* review of applications." *Burch v. Taylor Drug Store, Inc.,* 965 S.W.2d 830, 834 (Ky.App. 1998), abrogated on other grounds by *Kentucky Unemployment Ins. Comm'n v. Cecil,* 381 S.W.3d 238 (Ky.2012). "[W]hile the Commission generally does not hear

evidence directly from witnesses, it has the authority to enter independent findings of fact." *Id.* "Necessarily, such authority allows the Commission to judge the weight of the evidence and the credibility of witnesses and to disagree with the conclusion reached by the referee." *Id.*

■ KRS 341.370(1)(c) provides:

(1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:

. . . .

(c) He has left his most recent suitable work or any other suitable work which occurred after the first day of the worker's base period and which last preceded his most recent work voluntarily without good cause attributable to the employment. . . .

"The primary key in resolving conflicts such as this must be based on who causes the employee to quit." *Kentucky Unemployment Ins. Comm'n v. Melvin's Grocery Co., Inc.,* 696 S.W.2d 791, 792 (Ky. App.1985). The Supreme Court of Kentucky stated that separation is voluntarily initiated by the employee when the act of leaving is "freely given and proceeds from personal choice and consent." *Brownlee v. Commonwealth,* 287 S.W.3d 661, 664 (Ky. 2009) (citation omitted). "[G]ood cause . . . attributable to the employment" means "that work conditions must be sufficiently bad that the employee can reasonably feel compelled to quit." *Id.* The claimant bears the burden of establishing good cause attributable to the employment. *Id.*

In *Murphy v. Kentucky Unemployment Ins. Comm'n,* 694 S.W.2d 709 (Ky.App. 1985), a recently hired insurance agent was terminated by his employer after he failed a state-administered proficiency examination. A passing score on the examination was required before the agent could be eligible for the permanent license necessary for his continued employment. When Murphy sought to collect unemployment insurance benefits following his termination, the commission concluded that the employee had "severed his employment with the employer by voluntarily leaving without good cause when he failed to meet the condition of continued employment." *Id.* at 710. On appeal, this Court concluded that Murphy's failure to achieve "certain standards of academic competence" was indicative of his "unskillfulness or incompetence in that line of work . . . ." *Id.* On that basis, we concluded that the employer was not liable for payment of Murphy's unemployment insurance benefits.

The present case is distinguishable from *Murphy* because there was no evidence that Blakeman was unskilled or incompetent at her job as a selector, but that she had a legitimate inability to pass the physical agility test for reasons beyond her control. This fact brings the case under the decision of the former Court of Appeals in *Kentucky Unemployment Ins. Comm'n v. Henry Fischer Packing Co.,* 259 S.W.2d 436, 440 (Ky.1953), which held that an epileptic claimant who could no longer perform butchering duties for safety reasons "did not voluntarily leave his job but was discharged from it for reasons beyond his control." In the present case, there is no evidence that Blakeman voluntarily quit. Both Blakeman and Richard Drake, a representative of McLane Cumberland testified that Blakeman was discharged. Blakeman attempted to return to work, but simply could not pass the agility test. Therefore, under *Henry Fischer Packing Co., supra,* we conclude Blakeman did not leave her job voluntarily.

Accordingly, the order of the Jessamine Circuit Court is affirmed.

ALL CONCUR.