# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.


# Supreme Court of Kentucky

## 2018-SC-000455-DG

COMMONWEALTH OF KENTUCKY,  KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION

APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.      CASE NO. 2017-CA-001289-MR
LETCHER CIRCUIT COURT NO. 13-CI-00298

ELIZABETH MILES AND  DJ LETCHER MANOR

APPELLEES

## MEMORANDUM OPINION OF THE COURT

### REVERSING

Appellant, Kentucky Unemployment Insurance Commission ("KUIC"), appeals the Court of Appeals' affirmance of the Letcher Circuit Court's reversal of a denial of unemployment benefits to the Appellee, Elizabeth Miles. As a circuit court is an appellate body for unemployment insurance cases, we hold that the Letcher Circuit Court improperly made findings of fact in its order reversing the decision of KUIC. Unlike the trial court, however, KUIC is entitled by statute to issue new findings of fact when reviewing the decision of a hearing officer. KUIC properly issued new findings of fact and, based on those findings, denied benefits to Miles. An appellate court may only overturn that decision if no substantial evidence exists in the record supporting the decision of KUIC. Neither the Letcher Circuit Court nor the Court of Appeals reviewed

1

this case under the proper standard.  After thorough review of the applicable facts and case law, we find that substantial evidence did exist to support the denial of benefits.  Thus, we reverse the Court of Appeals and reinstate KUIC's original denial of benefits.

## I.  Factual and Procedural History.

Upon reversal of the referee's decision, KUIC issued the following independent findings of fact:

### FINDINGS OF FACT

The captioned employer is a nursing home located in Whitesburg, Letcher County, Kentucky. Claimant began working for the employer on June 27, 2007; she was assigned full time as a certified nurse's aide and paid $10.75 per hour.  Her assigned shift ended at 2:30 p.m.; however, she often stayed past shift end. She was frequently allowed to arrive late and/or leave early in order to attend to the needs of her children.

Published rules of the employer, known to Claimant, provide that workers are expected to maintain an acceptable standard of conduct; displaying unsatisfactory conduct subjects a worker to disciplinary action.  Behaviors specifically prohibited are: intimidation or harassment of another employee, whether by threat, abusive language, physical action or other means; and insubordination.  The open-door provisions provide for prompt review of any employee question or complaint; employees are to follow the appropriate chain of command in discussing their concern, unless it involves someone in their chain of command.

During her tenure with the employer, Claimant received and acknowledged twenty-seven disciplinary actions (written warnings) for various workplace infractions (unrelated to her eventual separation from the employment). There is no indication that she grieved any warning or discipline previously administered.

Claimant spoke to Ms. Cook and was referred to Carla Bishnoi (administrator). Ms. Bishnoi ascertained that Claimant was not a listed interviewee and gave her permission to leave the facility. As Claimant was preparing to leave, Ms. Adams informed Ms. Bishnoi of Claimant's earlier behavior.

On February 14, 2013, an investigator from the Office of

Inspector General ([“]OIG[”]) was at the facility to interview specific first shift employees on a list provided that morning. Interviews were not completed by 2:20 p.m.; therefore, Diana Sexton (director of nursing) issued an instruction for all first shift employees to remain at the facility until it was determined if they would be interviewed. Kathy Adams (supervisor) relayed the instruction. Claimant immediately advised that she was not going to stay as she had to pick up her children from school. She became loud and argumentative, questioning whether the employer could legally hold her at the facility past shift end. At the time of her outburst, she was in the doorway of a resident's room, and within earshot of residents, family members, and co-workers. Ms. Adams advised Claimant that she would need to speak to Rose Cook (nurse aide coordinator).

Ms. Bishnoi observed Claimant preparing to exit out the back door and approached to discuss the reported behavior. Ms. Bishnoi advised Claimant that her behavior was inappropriate, unacceptable and should not be repeated, and turned to go back to her office. Claimant followed and became argumentative, advising that if a supervisor was disrespectful to her, she had the right to be disrespectful in return. Ms. Bishnoi advised Claimant to leave and pick up her children. Claimant persisted, putting her hand in Ms. Bishnoi's face and backing her down the hallway toward her office. Ms. Bishnoi felt threatened and intimidated by Claimant's behavior, reiterating that Claimant should leave and the matter would be discussed later. Ms. Adams observed the final minutes of this interaction. Claimant left the facility at approximately 2:35 p.m.

On February 18, 2013, Claimant obtained contact information for Provider Management & Development Corporation (“PMD”) which she thought to be the corporate office for the employer. She called PMD in an attempt to file a complaint against Ms. Bishnoi. PMD could not process a complaint, as it is merely a consulting group and not an owner or regulator of the facility. PMD advised Ms. Bishnoi of the call.

Shortly after her attempt to file a complaint with PMD, Claimant was instructed three times to report to Ms. Bishnoi's office to discuss the incident of February 14, 2013; the instruction was relayed to Claimant by Ms. Adams. The first two instructions were refused outright; the third instruction contained an additional caveat: report or leave the facility without a job. Claimant reported, bringing Lee Pack (licensed practical nurse) as a witness. As Ms. Pack was responsible for patient care, she was not allowed to remain for the meeting but directed to return to her duties.

3

Ms. Bishnoi advised that the meeting was to conclude the discussion of the behavior displayed on February 14, 2013. Claimant advised that Ms. Bishnoi's version of events was erroneous and she was a "liar"; she reiterated that if a supervisor was disrespectful to her, she would be disrespectful in return. Ms. Bishnoi advised that Claimant did not have that prerogative, and a disciplinary action (written warning) would be presented for Claimant's signature the next day after the appropriate discipline was decided upon. As it was 3:30 p.m., Ms. Bishnoi advised Claimant to leave and pick up her children, unaware that Claimant had made arrangements that day for her mother to pick the children up from school.

After Claimant left, Ms. Bishnoi decided that a suspension would be issued as appropriate discipline and prepared a disciplinary action (written warning) to that effect. The warning was written on the same form as had been used for all previous warnings received and executed by Claimant; provides that signature indicates only that the warning has been read and received by the worker; and contains space for the worker to provide comments and/or indicate their disagreement with the employer's statement.

On February 19, 2013, Claimant advised her supervisor that she had thought it over and would not sign any disciplinary action presented by Ms. Bishnoi. Her announced decision was relayed to Ms. Bishnoi. Claimant was called to Ms. Bishnoi's office and discharged for refusing to obey instructions and displaying inappropriate behavior in the workplace.

Miles appealed KUIC's decision disqualifying her from receiving benefits to the Letcher Circuit Court. The circuit court made new findings of fact and reversed KUIC's denial of benefits. KUIC appealed this decision to the Court of Appeals which affirmed the circuit court's decision. We granted KUIC's petition for discretionary review.

## II.    Standard of Review.

Our review of a KUIC decision is "two-fold. We first determine whether [KUIC's] findings of fact are supported by substantial evidence, and then whether it correctly applied the law to the facts." *Kentucky Unemployment Ins.*

4

*Comm'n v. Hamilton*, 364 S.W.3d 450, 452–53 (Ky. 2011) (citing *Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002)). "Substantial evidence has been defined as evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 245 (Ky. 2012) (citation omitted). If substantial evidence exists, KUIC's factual findings "will be upheld even though there exists evidence to the contrary in the record." *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578 (Ky. 2002) (citation omitted).

### III.     Analysis.

The issue underlying this entire case is whether proper procedure was followed by KUIC and each reviewing court. KUIC "is not bound by the referee's decision [and] it reviews the matter de novo[.]" *W. Kentucky Coca-Cola Bottling Co., Inc. v. Runyon*, 410 S.W.3d 113, 116 (Ky. 2013). Once a referee has made a decision, KUIC "may on its own motion affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence[.]" KRS[1] 341.430(1). KUIC must issue a written decision, "which shall affirm the decision of the referee or present a separate finding of facts, decision, and reasons." 787 KAR[2] 1:110(2)(4)(a)(1). "[W]hile the Commission generally does not hear evidence directly from witnesses, it has the authority to enter independent findings of fact." *Kentucky Unemployment Ins. Comm'n v. Blakeman*, 419 S.W.3d 752,

---

[1] Kentucky Revised Statutes.

[2] Kentucky Administrative Regulations.

5

753–54 (Ky. App. 2013) (quoting *Burch v. Taylor Drug Store, Inc.*, 965 S.W.2d 830, 834 (Ky. App. 1998), *abrogated on other grounds by Cecil*, 381 S.W.3d 238). "Necessarily, such authority allows [KUIC] to judge the weight of the evidence and the credibility of the witnesses and to disagree with the conclusion reached by the referee." *Id.* at 754 (quoting *Burch*, 965 S.W.2d at 834).

While KUIC has authority to issue independent findings of fact, circuit courts do not. A circuit court sits as an appellate body, disconnected from the agency and thus, is tasked with only reviewing the evidence in the record to determine whether KUIC's findings of fact were supported by substantial evidence. In this case, the Letcher Circuit Court improperly reviewed the evidence and issued its own findings of fact.[3] Accordingly, we disregard the finding of facts and decision of the Letcher Circuit Court and directly review KUIC's written decision for substantial evidence supporting its decision.

KRS 341.370 provides:

(1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:

(b) He has been discharged for misconduct or dishonesty connected with his most recent work, or from any work which occurred after the first day of the worker's base period and which last preceded his most recent work, but legitimate activity in connection with labor organizations or failure to join a company union shall not be construed as misconduct[.]

---

[3] Moreover, the Court of Appeals erred when it opined that KUIC "adopted Referee Nelson's findings of fact without amendment." KUIC's findings of facts totaled almost two single-spaced pages, whereas Referee Nelson's totaled three sentences.

6

KUIC found that Miles was disqualified from receiving benefits based on five separate instances of misconduct.

> "Discharge for misconduct" as used in this section shall include but not be limited to, separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; **knowing violation of a reasonable and uniformly enforced rule of an employer**; unsatisfactory attendance if the worker cannot show good cause for absences or tardiness; damaging the employer's property through gross negligence; refusing to obey reasonable instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work.

KRS 341.370(6) (emphasis added).

> KUIC found that:

> Substantial evidence supports the finding that Claimant became argumentative, aggressive, and abusive when verbally reprimanded as she was exiting the facility on February 14, 2013. She placed her hand in Ms. Bishnoi's face and backed her down the hallway. Claimant displayed behavior both in violation of the standard which the employer had the right to expect; and of a known, reasonable, uniformly enforced rule of the employer which specifically prohibits "intimidation or harassment of another employee, whether by threat, abusive language, physical action or other means."

KUIC denied benefits to Miles for committing misconduct for a "knowing violation of a reasonable and uniformly enforced rule of an employer[.]" KRS 341.370(6). Although some instances of misconduct require an additional finding of bad faith or willful or wanton conduct, "when the employee is discharged for conduct specifically identified in KRS 341.370(6)[,]" no additional finding is required to deny benefits.

Miles's actions towards Ms. Bishnoi were a clear violation of Letcher Manor's uniformly enforced rule against "[i]ntimidation or harassment of

7

another employee, whether by threat, abusive language, physical action, or other means[.]" Ms. Bishnoi testified that Miles was "very argumentative, very assertive, very aggressive and she backed me up the hallway." Ms. Bishnoi also testified that Miles "was the one who came back in my face, threw her hand up in my face and she literally backed me up the hallway." Miles's actions felt "threatening" to Ms. Bishnoi. The trial court and Court of Appeals both mistakenly state that no other witness saw this interaction, but Letcher Manor's other witness, Ms. Adams, testified that she saw the aforementioned interaction and that Miles "had her hand up toward Ms. Bishnoi's face. Yes, she did." When asked if she considered Miles's hand motion as threatening, Ms. Adams stated, "I do."

While the referee sided with Miles's version of events which directly contradicts the testimony of Ms. Bishnoi and Ms. Adams, KUIC has the prerogative to issue its own findings of fact determining whether the employer or employee is more credible. *Blakeman*, 419 S.W.3d at 754 (citation omitted).[4] However, unlike KUIC, courts have no authority to weigh the testimony of both parties and make credibility determinations. Instead, when substantial evidence exists, KUIC's factual findings "will be upheld even though there exists evidence to the contrary in the record." *Landmark*, 91 S.W.3d at 578 (citation omitted). Ms. Bishnoi's and Ms. Adams's testimony unequivocally constitutes substantial evidence and thus, we must uphold the decision of

---

[4] Miles testified that she had never been disciplined by Letcher Manor. Letcher Manor followed up with proof that it had taken disciplinary action against Miles on 27 prior occasions. Although not necessary to our analysis, KUIC had every reason to believe the employer over Miles due to the above dishonest testimony during the referee hearing.

8

KUIC that Miles committed statutory misconduct under KRS 341.370(6). As even one instance of statutory misconduct is enough to uphold a denial of benefits, and this Court does not issue advisory opinions, we elect not to review Miles's four other alleged instances of misconduct.

## IV. Conclusion.

For the aforementioned reasons, we reverse the decision of the Court of Appeals and reinstate the KUIC's denial of unemployment benefits.

Wright, J., not sitting. Minton, C.J.; Hughes, Keller, Lambert, Nickell, and VanMeter, JJ., concur.

COUNSEL FOR APPELLANT:

Maria T. Russell
Linda Marion Keeton
EDUCATION AND WORKFORCE DEVELOPMENT CABINET
OFFICE OF LEGISLATIVE AND LEGAL SERVICES


COUNSEL FOR APPELLEE:

Charnel Marie Burton
APPALACHIAN RESEARCH AND DEFENSE FUND
APPALRED LEGAL AID

Evan Barret Smith
APPALRED LEGAL AID